[No. 6845.  Decided September 13, 1907.]

THE STATE OF WASHINGTON, *on the Relation of Skamania Boom Company, Plaintiff,* v. THE SUPERIOR COURT FOR SKAMANIA COUNTY, W. W. McCREDIE, JUDGE, *et al., Respondents.*[1]

EMINENT DOMAIN—LAND DEVOTED TO PUBLIC USE—REASONABLE NECESSITY. A railroad company has the power to condemn a right of way across the lands of a boom company already devoted to a public use, if a reasonable necessity exists therefor; and such necessity is shown where it appears that to go around the defendant's lands would necessitate the building of the road out in the Columbia river, in a strong current, which would be unsafe and very expensive, while the use of defendant's lands as a holding ground for logs would not be entirely destroyed by the condemnation, and there had been occasion for such use only for a few weeks during the last eight years.

SAME—PROCEEDINGS—CONDITIONS PRECEDENT. Under Bal. Code, § § 4334, 4335, it is not a condition precedent to condemnation proceedings by a railroad company (except in case of railroad crossings) that the company should attempt to agree with the owner as to the compensation to be paid for land already devoted to a public use.

SAME. An attempt to agree with the owner as to compensation is not a condition precedent to condemnation proceedings, where it appears that such attempt would be fruitless.

Certiorari to review an order of the superior court for Skamania county, McCredie, J., entered June 28, 1907, after a hearing on the merits, adjudging a public use and directing the assessment of damages in a condemnation proceeding. Affirmed.

*George S. Shepherd* and *Helmus W. Thompson,* for relator.

*James B. Kerr* and *A. L. Miller* (*L. C. Gilman,* of counsel), for respondents.

HADLEY, C. J.—A writ of review was issued by this court for the purpose of reviewing the action of the superior court

[1] Reported in 91 Pac. 637.

of Skamania county in certain condemnation proceedings. The action in the trial court was initiated by the petition of the Portland & Seattle Railway Company against the Skamania Boom Company and others. The said petitioner and also said boom company are corporations, organized under the laws of this state, the former for railway purposes and the latter for booming purposes. The petitioner has surveyed and located a line of railroad and is now engaged in the construction thereof down the north bank of the Columbia river, from a point at or near Kennewick, Washington, to Vancouver, Washington, and thence across said river to Portland, Oregon, which railroad it proposes to build and operate as a common carrier of freight and passengers. It claims that, for the purposes of the construction and operation of said railroad, it is necessary to condemn and appropriate for its use as a right of way a certain strip of land two hundred feet in width, being one hundred feet on each side of the center line of the railroad as now located, across a tract of land owned by the said boom company. A preliminary hearing was had and the court found that it is necessary for the petitioner to condemn and appropriate said strip of land for its use as a right of way, that the contemplated use is a public use, and that the public interest requires the appropriation of the land for said railway purposes. It was ordered that a jury should be impaneled for the purpose of ascertaining the damages resulting from such appropriation. The boom company thereupon filed its petition here as relator, and asked the writ of review. Meanwhile the trial of the question of damages has been suspended.

The situation is substantially as follows: The relator owns a tract of land containing about thirty-eight acres, lying upon the east bank of Wind river and a short distance to the north of the confluence of said stream with the Columbia river. The relator's plat or survey as a boom company, filed in the office of the secretary of state of the state of Washington, and which shows so much of the shore line of the waters of Wind

river and lands contiguous thereto as are proposed to be appropriated by said boom company as necessary for its purposes, embraces the said tract. The location of the railway line is about the center of this tract, considered from the north to the south, and crosses the tract in an easterly and westerly direction, leaving practically equal parts of the tract to the north and south of the right of way strip sought to be appropriated. The relator claims that it needs this entire tract as a holding ground for logs in times of high water; that when the waters of the Columbia are high the logs cannot be handled at the mouth of Wind river, and that the waters are forced up Wind river which overflows the tract in question, forming a holding ground for the logs. The testimony shows that, during a period of eight successive years, the relator has actually used the ground twice in connection with handling logs. Each time the period of such use covered a few weeks by reason of the fact that the land was covered by water. So far as the evidence shows, the land at all other times during the eight years has either been entirely uncovered by water or has not been under sufficient water to be used for logging purposes. It further appears that, at the two times named, the use that was made of the ground was for brailing or sorting logs. Under such circumstances, the relator claims that the tract in question has been devoted to a public use; that the relator is a public service corporation; having previously devoted the land to a public purpose, and that the railway company cannot condemn it for another public purpose.

Assuming, without deciding, that the facts in evidence are sufficient to show that the tract had been actually appropriated by the boom company for a public use, still the strip sought to be taken by the railway company constitutes but a small part of the entire tract said to be devoted to the public purpose. The case is, therefore, not that of one public service corporation seeking to deprive another such corporation of its entire means of operation at a given location. Both to the north and south of the strip sought to be condemned is room remain-

ing. In whatever manner the railway may be built across the tract, whether upon unfilled trestle work or with a filled embankment, the bed of Wind river must in any event remain open and unobstructed through which the back water may flow and then overflow the tract upon both sides of the railroad. Within the principles discussed in *Samish River Boom Co. v. Union Boom Co.*, 32 Wash. 586, 73 Pac. 670, the power exists for one public service corporation to condemn property held by another. Such power may not be exercised arbitrarily or indiscriminately so as merely to take property away from one corporation and give it to another. It cannot be taken to be used for the same purpose in the same manner; but where there is a necessity for devoting it to some other public service, it may be condemned. As to the degree of necessity which must exist, there is difference of opinion. Some courts have held that the necessity must be an absolute one, but the weight of opinion is that it must be a reasonable necessity. Lewis, Eminent Domain (2d ed.), § 276.

The same section says:

"But we should say that there was a reasonable necessity for the taking where the public interests would be better subserved thereby, or where the advantages to the condemnor will largely exceed the disadvantages to the condemnee."

To the same effect the relations of a condemning corporation to the property of another arising from reasonable public necessity were discussed by this court in *State ex rel. Portland & Seattle R. Co. v. Superior Court*, 45 Wash. 270, 88 Pac. 201.

It being established that the power to condemn exists in favor of the railway company as against the relator if a necessity exists, we must next inquire if a reasonable necessity does exist. The trial court found that it does, and we think the evidence sustains the finding. The relator contends that a line which it proposes to the south of its tract of land would be a practicable route, and that by its adoption the appropriation

of any portion of relator's tract would be avoided. The evidence does not show that it would be impossible to construct and maintain upon the proposed line, but it does show that the water line of the Columbia river extends a long distance beyond the proposed location, and from a profile shown on the map filed, it appears that the track would have to be supported by a high fill or trestle. It is the relator's own contention that the current of the river at this point is such that in times of high water it cannot handle its logs there, and hence it claims the necessity for the ground sought to be condemned in order that it may hold its logs upon it at such times. The relator's own argument shows that its proposed route for the railway would require the construction and maintenance of the line within this same current, making it necessary to operate freight and passenger trains upon some kind of structure that must resist the force of the current. The safety of the lives of passengers and the careful transportation of freight constitute great public necessity, and the public cannot reasonably be subjected to the hazards attending the proposed location, when they may be avoided by the use of a strip of relator's land. It also appears that the construction and maintenance upon the proposed route would be very expensive. While this may not of itself be a sufficient reason for taking relator's property, unless it amounts to a practical prohibition, yet when it is considered in connection with the other elements mentioned, the comparative expense is not an improper matter for consideration in determining as a whole the reasonableness of the appropriation. All the circumstances taken together, tested by the standards above mentioned, show a reasonable necessity for the appropriation.

It is also urged that the court erred in giving judgment for condemnation, for the reason that it was not shown that any effort was made to agree with the relator upon the amount of compensation prior to instituting the condemnation proceeding. By reference to Bal. Code, § 4334 (Laws 1903, p.

383), it will be seen that extent of the right of appropriation in general on the part of a railway company is there stated, and it is not made a condition precedent to the bringing of condemnation proceedings that a prior attempt to agree upon compensation shall be made. Section 4335 (P. C. § 7090), does contemplate that, when one railway company seeks to condemn a way for a crossing over the tracks of another railway company, an effort to agree upon the compensation shall first be made. Relator argues that, by analogy, that section should apply here, for the reason that this is the case of a railway company seeking to condemn a crossing over the property of another public service corporation. The statute in its terms is confined to the case of two railway companies, and we are not authorized to extend its operation to other cases. In any event, even if it were construed as relator contends, this record shows that the relator wholly denies the right or power to condemn at all in this instance, and an effort to agree upon damages under such circumstances would have been fruitless. The case is therefore analogous to the absence of a tender of performance of an obligation when the facts show that a tender would have been fruitless. In such a case the tender may be excused. Under either view of the statute relator is not entitled to urge this point.

The judgment as to the necessity for appropriation is affirmed, and the order of this court suspending further proceedings is hereby vacated.

RUDKIN, CROW, and MOUNT, JJ, concur.