[No. 6834. Decided October 29, 1907.]

THE STATE OF WASHINGTON, *on the Relation of Ora E. Wilson et al., Appellant*, v. THE SUPERIOR COURT FOR CHEHALIS COUNTY *et al., Respondents.*[1]

EMINENT DOMAIN—PUBLIC USE—RIGHT TO CONDEMN—LOGS AND LOGGING. Condemnation by a boom company of ten feet along the banks of a stream, for the purpose of driving logs by means of artificial freshets, is a public use, although the company had only driven logs for one timber company, whose officers and stockholders were the same as those of the boom company, where it appears that four or five hundred million feet of timber was tributary to the stream, and it was not shown that it all belonged to one company.

SAME—LOSS OF RIGHT—NONUSER. The right of condemnation by a boom company is not lost by nonuser of its franchise, for the term of eight months, as provided by Bal. Code, § 4393, where it appears that during such time its dams were operated by a timber company, under a lease, and no public demand made upon it was refused during such time; as nonuser is not thereby established.

SAME—PROCEEDINGS—PREREQUISITES—ATTEMPT TO AGREE. Where condemnation proceedings are contested on the ground that the petitioner has no right to condemn, it is immaterial that there was no attempt to agree upon the amount of compensation for the property taken.

Certiorari to review a judgment of the superior court for Chehalis county, Irwin, J., entered May 27, 1907, after a hearing on the merits, adjudging a public use, etc., in an action to condemn the waters of a stream for logging purposes. Affirmed.

*W. H. Abel*, for relators.

*J. B. Bridges*, for respondents.

HADLEY, C. J.—A writ of review was issued in this cause for the purpose of reviewing the action of the superior court of Chehalis county in certain condemnation proceedings. The

[1] Reported in 92 Pac. 269.

petitioner asking condemnation is the Wynooche Driving
Company, a corporation organized under the laws of this
state to improve rivers and streams for the purpose of driving
logs and timber products thereon.  In the articles of incorpor-
ation it is particularly declared that the corporation intends
to engage in said business on the Wynooche river and its tribu-
taries in Chehalis county in this state.  The petition avers
that, by reason of its powers in the premises, the petitioner
has cleared out and straightened what is known as Black
creek, which is a tributary to the Wynooche river in said Che-
halis county.

It is further alleged that the creek flows through certain
described lands which belong to the defendants in the con-
demnation proceeding; that the petitioner has heretofore con-
structed and operated, and that it desires in the future to
operate certain dams for the purpose of holding and storing
the waters of said stream above said lands.  The purpose of
storing the waters is that the same may be periodically re-
leased and thereby create in the creek below artificial freshets
for the purpose of driving logs and other timber products.
It is alleged that during the freshet season of the year the
stream is navigable for the floatage of logs and other timber
without the aid of artificial freshets, but that during other
seasons it is not so navigable, and that artificial freshets are
necessary to make the stream commercially more valuable, and
in order that logs may be driven during all seasons of the
year; that an extensive and valuable tract of timber is tribu-
tary to the stream, and should be floated down the creek by
means of both natural and artificial freshets as aforesaid into
the Wynooche river, and thence to the market; that logs are
continually being placed in the creek and consigned to the
petitioner to be driven down, and that it is necessary in order
for the petitioner to perform its duties as required by law,
that it shall operate said dams and create said artificial fresh-
ets; that in driving the stream by means of the freshets, small

portions of the banks are liable to wash away, and that it is also necessary for the employees of petitioner at times to go upon the banks of the stream in order to break jams formed by the logs and to pole and drive them down; that for said purpose it is particularly necessary that the petitioner shall have vested in it the right to go upon a strip of land ten feet in width adjacent to and parallel with the westerly and northerly bank of said creek as it runs through the aforesaid lands, public necessity requiring the appropriation of the said right for the aforesaid purposes.

A preliminary trial was had for the purpose of determining if the contemplated use is a public one. The court found the facts to be substantially in accordance with the averments of the petition as above stated, and held that the contemplated use is a public one constituting a public necessity. A judgment was entered appropriating the right to create, by means of dams, artificial freshets in the stream where the same passes the said lands, such freshets not, however, to overflow the banks of the stream; also the right to drive logs and other timber products consigned to the petitioner down the stream and past the said lands by means of said artificial freshets; also the right of the petitioner, through its officers, agents, and employees, to go upon said strip of land ten feet in width, for the purposes aforesaid. On the application to this court by the defendants in the condemnation proceeding, the writ of review was issued to review said judgment.

The chief contention of the relators is that the court erred in finding the contemplated use to be a public one in view of the evidence. It is urged that the evidence shows the use to be for the private benefit only of the Frank H. Lamb Timber Company, a corporation. The officers and stockholders of the timber company and the driving company are the same. But the identity and purposes of the two corporations are entirely distinct and different. The timber company exists for ordinary commercial purposes for the private benefit of its stock-

holders, and owing no duty to the public other than is due from other trade corporations similarly organized. The driving company although owned and directed by the same persons as the timber company, has, nevertheless, by virtue of its organization under the laws of this state, assumed certain duties and obligations to the public similar to those of a common carrier. Its identity as a public service corporation places upon its officers and owners duties entirely different from those of the same persons in the other corporation. Up to the time of the trial, the only timber shown to have been floated down the steam was placed therein by the timber company, and for a time the latter operated the dams and drove its own timber. This was, however, by a lease arrangement with the driving company, the owner of the lands, whereby the timber company was to operate the dams and drive the timber placed in the stream, paying the driving company a stipulated price for the privilege. But at the time the condemnation proceeding was commenced, the driving company was itself operating the dams and driving all the timber.

Inasmuch as the only service heretofore rendered by the driving company has been for the timber company, and inasmuch as the testimony did not affirmatively show that there are other timber owners tributary to the stream, the relators argumentatively draw the conclusion that the only services which the driving company can or will render must be in behalf of the timber company, and that the use sought is therefore a private one, being for the benefit only of the persons who are the stockholders of the two corporations. The testimony shows that there is probably from four hundred to five hundred million feet of timber tributary to the stream, and in the absence of testimony affirmatively showing that such a large body of timber is all owned by one owner, we think it should not be presumed that it is so owned. The testimony is silent as to the ownership of the timber, although relators' counsel was present and cross-examined the witnesses. When it was shown that so large a tract of timber is tributary to this

floatable stream, we think it followed as a conclusion that this duly organized and authorized driving company, in seeking to operate upon the stream, must do so as a servant of the public. The public may demand the services of the corporation since it is a quasi public corporation. As a condition of its existence, it must handle all logs and floatable timber which any individual or corporation may consign to it. The right to condemn is determined by this right of the public to demand the services so as to make necessary the appropriation sought. Such is the test, rather than the extent to which the right will be exercised by the public. *State ex rel. Ami Co. v. Superior Court*, 42 Wash. 675, 85 Pac. 669.

It is assigned that it was error not to hold that the driving company has lost by nonuser its right to condemn. This contention is based upon the fact heretofore stated that the operations upon the stream were for a time turned over to the timber company, and also by reason of the statute as found in Bal. Code, § 4393 (P. C. § 7126), as follows:

"Should any corporation neglect, for the period of eight months after improving any stream or river, to operate its dams, or to otherwise perform its duties as herein provided, then all rights herein conferred to such corporations upon such streams or rivers, or portions thereof, shall cease."

During the time the timber company was operating, it did so as the lessee of the driving company. It was engaged in driving its own logs, and no others were placed in the stream during the time it so operated. The public made no demand which was refused, and the dams and the stream were operated by the driving company through its lessee and agent. Such facts do not establish nonuser. In *State ex rel. Trimble v. Superior Court*, 31 Wash. 445, 72 Pac. 89, it was held that where a railway company had leased its line of road to another corporation and neither operated its road nor possessed any rolling stock of its own, it was not thereby deprived of the power to condemn private property.

It is objected that the court erred in finding that the petitioner and the owners had been unable to agree as to the amount of compensation to be paid for the property rights sought to be appropriated. In *State ex rel. Skamania Boom Co. v. Superior Court, ante* p. 166, 91 Pac. 637, we held that when a defendant in a condemnation proceeding takes the position that the petitioner has no right to condemn, the question of inability to agree as to compensation thereafter becomes immaterial. Such being relators' position here, it is immaterial what the court found upon that subject.

The judgment is affirmed, and the trial court is directed to proceed to ascertain the amount of compensation to be paid.

FULLERTON, RUDKIN, DUNBAR, MOUNT, CROW, and ROOT, JJ., concur.