[No. 11856.   Department One.   June 26, 1914.]

THE CITY OF SPOKANE, *Appellant*, v. RUFUS MERRIAM *et al.*,
*Respondents.*[1]

EMINENT DOMAIN — BY MUNICIPAL CORPORATIONS — PROCEEDINGS—
PREREQUISITES—NECESSITY OF ATTEMPTING TO AGREE.   The provision
of Spokane city charter, art. 5, § 49, relating to condemnations, which
provides that if the park board shall be unable to purchase at a satis-
factory price, any lands sought, the council shall, upon notice given
by the board, condemn the same, is not a valid limitation upon the
power of the city to condemn only where effort to secure the prop-
erty sought by agreement has failed; in view of the general statutes,
Rem. & Bal. Code, §§ 7768-7771, conferring the power of eminent do-
main and fixing the procedure, without any such limitation or any
reference to any action by the park board or authority to delegate
any part of the power to the park board.

SAME—CONDITION PRECEDENT—JURISDICTION—WAIVER OF OBJECTION.
The failure to agree upon the price of land sought is not a condition
precedent to the institution of condemnation proceedings, unless it
is so prescribed in the act; hence a failure to allege or prove the
same is not a jurisdictional defect and is waived if not raised below.

SAME—PUBLIC USE—TAKING OF LAND FOR PARK.   The taking of
lands for public parks, boulevards and parkways is a public use.

SAME—PROCEEDINGS—CONDITIONS PRECEDENT—PRESUMPTIONS.   The
statutes having entrusted to the city council the power to initiate
condemnation proceedings by ordinance, in the absence of fraud the
courts will presume that all antecedent executive and quasi judicial
investigation prescribed by law preceded the adoption of an ordi-
nance invoking the exercise of the power of eminent domain by a
city.

SAME—PUBLIC NECESSITY.   In condemning lands for park pur-
poses, a city need not show an immediate necessity for an immediate
use, but has a right to anticipate future needs.

EMINENT DOMAIN—PUBLIC NECESSITY — EVIDENCE — SUFFICIENCY.
Where ordinances providing for condemnation declared that property
sought to be taken was necessary for park purposes, and a recital of
the facts upon which such declaration was based would not further
establish its truth or good faith, in the absence of some charge of
fraud, and it was further shown that the land sought was required to
connect two other tracts donated to the city for park purposes and

[1]Reported in 141 Pac. 358.

which could only be retained by securing the property sought, and that the request of the park board for the condemnation had been recommended by the committee appointed by the council to investigate the same, the evidence was sufficient to show a reasonable necessity for the taking of the land for park purposes, and that the taking was sought in good faith.

SAME. Such evidence is admissible on the question of the public use and necessity for condemning the land.

Appeal from a judgment of the superior court for Spokane county, Webster, J., entered January 29, 1914, dismissing proceedings to condemn property for park purposes, after a trial before the court and a jury. Reversed.

*H. M. Stephens*, for appellant.

*Post, Avery & Higgins*, for respondents Merriam.

*Graves, Kizer & Graves*, for respondents Birch and Jones.

ELLIS, J.—This is an action to condemn land for a public park. The complaint alleges:

"That the electors of the city of Spokane have authorized a bond issue of $875,000 for the purpose of acquiring and improving land for park purposes; that the board of park commissioners of the city of Spokane has planned as part of the park system of the city of Spokane, boulevards, parks and playgrounds located in different parts of the city of Spokane, to furnish roads, playgrounds and parks for the general public; that the property hereinafter described is part of the property determined upon by the said board of park commissioners for said park use and that it is necessary and public necessity requires to acquire the above described property for the public uses and purposes as above set forth in order to serve and accommodate the people of the city of Spokane."

Omitting other immaterial matter, it is then alleged that the city passed two ordinances numbered respectively "C1443" and "C1444," copies of which are attached to, and made a part of, the complaint. The first of these, omitting immaterial parts, is as follows:

"An ordinance providing for the condemnation for public park purposes of the following described property, compris-

ing approximately five (5) acres, more or less, situated in the city and county of Spokane, Washington, to wit: [here follow specific description of the real property which it is admitted belongs to the defendants Merriam and wife] and directing the corporation counsel to institute proceedings therefor.

"Whereas, public necessity requires that the property above described be acquired by the city of Spokane for public park purposes, now, therefore,

"The city of Spokane does ordain:

"Section 1.   That the corporation counsel be and he is hereby instructed and authorized to institute proceedings for the condemnation for public park purposes of the following described property situated in the city and county of Spokane, Washington, comprising approximately five (5) acres, more or less, to wit:" [here the property sought to be taken is again specifically described.]

The other ordinance is identical with this, save that the property specifically described comprised approximately thirty-four acres and is the property admittedly belonging to Birch and wife, Charles H. Jones and wife and Melville F. Jones.   The petition closes with the usual prayer in such cases.   A jury was empaneled and sworn and, by agreement of counsel, visited the property sought to be taken.

The plaintiff offered in evidence the testimony of the engineer of the city park board to the effect that he had made surveys of the land involved and a map showing its relation to the city of Spokane and to other park property of the city.   This map, which is in the record, shows that the two pieces of property sought to be taken, known as the Merriam property and the Birch and Jones property, form one complete tract, comprising about thirty-nine acres lying between, and forming a connecting link between, two tracts which the witness testified were lands which had been donated to the city for park purposes.   Each of these donated tracts apparently contains something over forty acres.   The witness also identified, as prepared by himself, a contour map of the land sought to be taken, showing that all save about

ten acres is rough land, lying upon a hillside. Certified copies of the two ordinances attached to the petition were offered and received in evidence. Objection was made by the defendants that these ordinances were not sufficient in themselves to show a public use. The court intimated that additional proof of the public use and necessity would be required. The plaintiff thereafter sought to introduce a certified copy of the petition of the park board and the park board record, requesting the council to make the condemnation, and the deeds of donation conveying the two tracts of land on either side of the property sought to be condemned and the proceedings of the city council touching the condemnation, and called the secretary of the park board to identify the park board records for the purpose of this proof. The offer, upon objection, was rejected. The secretary of the park board identified, from the minutes of a regular meeting of the park board of July 10, 1913, a communication on behalf of the owners of the two tracts of land on either side of, and adjoining the property here sought to be taken, offering to dedicate these two tracts to the city upon the following condition:

"The above proposition is made provided the city will open to the public the thoroughfare we are herewith proposing to dedicate through section 31, and acquire title and occupy the 39 acres in the northeast quarter of the southwest quarter of said section for thoroughfare and park purposes, also to improve immediately in a good workmanlike manner this thoroughfare through section 31 by grading a road at least 20 feet wide, and our land to revert to us should the city not improve the same as a parkway and for park purposes within a reasonable time, or ever use it for any other purpose. It is our understanding that this thoroughfare is to be improved according to the tentative plans already made by the Olmsted Brothers of Boston."

Following this, was offered an order or resolution of the park board, as follows:

"On motion of Commissioner Wilson, seconded by Commissioner Geraghty, and carried by the affirmative vote of all commissioners present, excepting Commissioner Hamblen, who did not vote thereon, the matter was referred to the Acquisition Committee with power to act, and the president and secretary authorized and instructed to request the city council to condemn the entire area owned by Jones, Birch and Merriam, in said section 31, instead of a roadway through same as originally ordered."

Plaintiff also offered in evidence deeds from the parties mentioned in the foregoing offer, conveying to the city of Spokane the property therein described, namely, the two tracts of land on either side of the property sought to be taken, which deeds contain express covenants to the effect that, as a part of the consideration for the conveyance, the city of Spokane will acquire the thirty-nine acres and will improve, occupy, and forever maintain for park and thoroughfare purposes and no other, "the land so acquired and the land herein conveyed," and, as soon as the weather will permit, will grade a roadway at least twenty feet wide through the lands, and, further, that the land conveyed will be connected with the city park and parkway system, and will be improved and maintained as early as conditions in the adjacent locality will warrant. Each of the deeds contains the further covenant that, in the event of the failure of the city to comply with any of the conditions of the grant, the land conveyed shall revert to the grantor. There are four of these deeds, all containing substantially these same conditions. Certified copies of the petition presented to the city council for the condemnation and of the proceedings of the council with respect to the property involved were offered, objected to, and rejected. Two of these are communications from the park board to the mayor and city council, stating, in substance, that, at a meeting of the park board on August 14, 1913, it was ordered that the city council be requested to condemn the property here sought to be taken and describing by specific descriptions the five acres (the Merriam tract)

and the thirty-four acres (the Birch and Jones tract) and closing with the statement that the matter had been under consideration for several years; that ordinances had been passed by the city council for condemnation through this area, and called attention to the fact that the change of description would probably require new ordinances. There was also offered a communication from the commissioner of public utilities, city engineer, and commissioner of public works to the mayor and city council, reciting that these, as a committee appointed to investigate the condemnation of land in accordance with the petition from the park board, begged to report that, after a careful investigation, they recommended the condemnation as requested. The superintendent of parks for the city of Spokane was called as a witness and the offer made to prove by him the plan of the park board for improving the two tracts of land which had been donated to the city, and in connection therewith of the property here sought to be taken, for park purposes. This evidence was also excluded.

The trial court held, in substance, that the ordinances pleaded in the petition for condemnation were insufficient to initiate the proceeding, in that they declared generally that the public interest requires that the property described be acquired by the city of Spokane for public park purposes. The court was of the opinion that the purposes of the city to use this land for park purposes and the necessity for that use could only be proved by ordinances of the city to that effect, and held that, before the city can condemn property for any purpose, whether for parks or otherwise, "it must, by appropriate ordinances, set forth the improvement or scheme in furtherance or execution of which the property sought to be condemned is to be used and the manner of the use to which it is to be put." The court thereupon refused to consider any of the evidence offered by the city as tending to show the purpose and necessity of the condemnation, discharged the jury, and dismissed the proceeding. The city appealed.

Two principal questions are presented for consideration: (1) Was the failure to allege and prove an effort to agree with the owners as to the compensation for the land sought to be taken a fatal defect? (2) Were the ordinances pleaded and proved sufficient, in connection with the evidence offered, *prima facie* to show a public use and necessity?

I. The statute enumerating the powers of cities of the first class, Rem. & Bal. Code, § 7507 (P. C. 77 § 83), declares that any such city shall have power:

"To acquire, by purchase or otherwise, lands for public parks within or without the limits of such city, and to improve the same."

Section 7768 (P. C. 171 § 31) declares:

"Every city of the first, second and third classes and other cities having a population of over fifteen hundred inhabitants within the state of Washington, is hereby authorized and empowered . . . to condemn land or property, or to damage the same, either within or without the limits of such city for public parks, drives and boulevards . . . and to condemn land and other property and damage the same for any other public use after just compensation having first been made or paid into court for the owner in the manner prescribed by this act."

Section 7769 (P. C. 171 § 33) declares:

"When the corporate authorities of any such city shall desire to condemn land or other property, or damage the same, for any purpose authorized by this act, such city shall provide therefor by ordinance, and unless such ordinance shall provide that such improvement shall be paid for wholly or in part by special assessment upon property benefited, compensation therefor shall be made from any general funds of such city applicable thereto."

Section 7770 (P. C. 171 § 35) declares that, when any such ordinance shall have been passed by the legislative authority of a city, such city shall file a petition in the superior court in the name of the city, praying that just compensation, to be made for the property to be taken or damaged for

the purpose specified in the ordinance, be ascertained by a
jury or by the court in case a jury be waived.

Section 7771 (P. C. 171 § 37) declares:

"Such petition shall contain a copy of said ordinance, cer-
tified by the clerk under the corporate seal, a reasonably ac-
curate description of the lots, parcels of land and property
which will be taken or damaged, and the names of the owners
and occupants thereof and of persons having any interest
therein, so far as known, to the officer filing the petition or
appearing from the records in the office of the county aud-
itor."

Then follow provisions for service of summons, trial and
judgment.

It will be noted that these statutory provisions conferring
the power of eminent domain and prescribing the mode of its
exercise by cities do not require an antecedent attempt to
agree with the owner for the purchase of the land sought to
be taken either as a jurisdictional prerequisite or otherwise.

The charter of the city of Spokane (article 5, § 48) au-
thorizes the park board of that city to lay out and establish
parks, and purchase or accept land for that purpose, and
confers the management and control of all parks and grounds
used for park purposes and connecting boulevards and park-
ways owned or controlled by the city upon the park board.
It declares that all property acquired by the park board
shall be in the name of the city. Section 49 of the same ar-
ticle relates to condemnation of land for park purposes and,
so far as here material, provides:

"(a)    If the board shall be unable to purchase at a sat-
isfactory price any lands or other property for park pur-
poses or be unable to make a satisfactory arrangement as to
compensation, the council, upon notice given by the board,
shall condemn the same at the expense of the park fund."

It is upon this provision of the city charter that the re-
spondents base their claim that the effort to agree with the
owners is a jurisdictional prerequisite to condemnation by
the city. It is argued that, because the original act of 1890,

Laws 1890, p. 215, *et seq.*, empowered cities of the first class to adopt charters for their own government, and the act of 1911, Laws of 1911, page 54 (3 Rem. & Bal. Code, §7493-1), confers upon cities of the first class the power to determine by their charters the form of organization and manner and mode of exercising their powers and functions, therefore, the foregoing provisions of the city charter have all the force of a general law as applied to the city of Spokane, and import into the general law relating to condemnation a limitation of the city's power to condemn to cases where the effort to secure the property sought by agreement has failed. We find no merit in this contention. Neither of the statutes conferring upon cities of the first class the power to adopt charters for their own government has conferred upon such cities the power to provide a procedure for the exercise of the right of eminent domain. *Tacoma v. State*, 4 Wash. 64, 29 Pac. 847. The power of eminent domain has never been conferred by the state upon the park board, nor has the state ever authorized the city to delegate to the park board the power to say, by resolution or otherwise, when, how, or upon what conditions the city may exercise the power of eminent domain for park purposes or other purposes. The power having been conferred upon the city for the public good and the manner of its exercise having been prescribed by the statutes above outlined (Rem. & Bal. Code, §§ 7768 *et seq.*; P. C. 171 § 31), the city cannot prescribe by charter or otherwise, as a jurisdictional prerequisite to its exercise of that power, any action of the park board. This comes from the sovereign nature of the power of eminent domain. It is a part of the state's sovereign power which cannot be delegated even by the legislature except by express grant or by necessary implication; never by mere argumentative inference. *State ex rel. Wauconda Inv. Co. v. Superior Court*, 68 Wash. 660, 124 Pac. 127, Ann. Cas. 1913 E. 1076; Lewis, Eminent Domain (3d ed.), § 371.

The requirement that the park board shall attempt to pur-

chase before asking the city to condemn, which is at most only implied by the above charter provision, is a mere administrative detail the failure to observe which in no manner affected the city's power to condemn. It may be conceded that, where the duty to attempt to agree with the owner is imposed by the statute conferring the right to condemn, and prescribing the mode of its exercise, the failure to make the attempt will be fatal to the proceeding. *Seattle & M. R. Co. v. State*, 7 Wash. 150, 34 Pac. 551, 38 Am. St. 866, 22 L. R. A. 217. But where the statute conferring the power and prescribing the proceedings for its exercise does not make the effort to agree a condition precedent to the exercise of the right of condemnation, the failure to show that such an attempt was made will not be fatal. *State ex rel. Skamania Boom Co. v. Superior Court*, 47 Wash. 166, 91 Pac. 637; *State ex rel. Wilson v. Superior Court*, 47 Wash. 397, 92 Pac. 269; *State ex rel. Burrows v. Superior Court*, 48 Wash. 277, 93 Pac. 423, 125 Am. St. 927, 17 L. R. A. (N. S.) 1005. This court has held, even where the statute delegated the power of eminent domain to cities for the straightening of water courses (Bal. Code, § 944; Rem. & Bal. Code § 7690; P. C. 77 § 337), when "the city council cannot agree with the owner thereof as to the price to be paid" that the effort to agree is not a condition precedent to the right to condemn, since not so prescribed in the act of 1905, which, as amended, constitutes Rem. & Bal. Code § 7768 *et seq.* (P. C. 171 § 31), furnishing the procedure for the condemnation. In *Puyallup v. Lacey*, 43 Wash. 110, 86 Pac. 215, this court, speaking through Judge Rudkin, said:

"While it is true that § 944 only authorizes condemnation after failure to agree, yet, the right or power to condemn is conferred by that section, and the procedure is regulated by the act of 1905, *supra*, under which the proceedings in question were instituted. The latter act authorizes proceedings under it 'to condemn land and other property and damage the same for any other public use within the authority of such city after just compensation having been first made or

paid into court for the owner in the manner prescribed by this act;' and the failure of the parties to agree on the price is not a condition precedent to the institution of proceedings under this act."

See, also, to the same effect, *State ex rel. Jones v. Superior Court*, 44 Wash. 476, 87 Pac. 521. The foregoing authorities are decisive of the question under discussion. It may be conceded that the provisions of the city charter above referred to have as great force as if contained in an act of the legislature. It will hardly be claimed that they have greater force than such an act, but, as shown by the foregoing decisions, even an act of the legislature containing the same inferential direction for an attempt to agree with the owner is not a jurisdictional prerequisite to the condemnation when not found in the act prescribing the procedure for condemnation as a condition precedent. Moreover, it is admitted that this question was in no manner raised or passed upon in the lower court. This being a mere administrative detail imposed by the charter, and not a condition of the grant of the power from the state, it is not a jurisdictional prerequisite to the maintenance of the action. At most, the failure to observe it was a mere irregularity. It was waived by the failure to object in the court below.

II. Were the ordinances pleaded and the evidence offered by the city sufficient *prima facie* to show a public use and necessity for the taking? It is, of course, conceded that the taking of lands for public parks, boulevards and parkways is a public use. 4 McQuillan, Municipal Corporations, § 1486. The power of the city to take lands by condemnation for these purposes is conferred by the same statute and the city is authorized to exercise the power in the same way and by the same procedure as in the taking of lands for public streets. Rem. & Bal. Code, § 7768 *et seq.* (P. C. 171 § 31). It is the established law of this state, as declared by repeated decisions, that when a city has jurisdiction to take lands for public streets, "the determination of the questions

of public use and public necessity by the proper municipal officers is conclusive upon the courts in the absence of fraud." *Tacoma v. Titlow,* 53 Wash. 217, 101 Pac. 827; *Tacoma v. Brown,* 69 Wash. 538, 125 Pac. 940. The respondents concede that "the same rule holds good, of course, with respect to parks." This is undoubtedly true. But it is argued that "the statutes do not purport to prescribe by what municipal authorities the granted powers shall be exercised," and, therefore, under the above mentioned provisions of the city charter, they must be exercised by the park board. In this counsel are in error. The right of eminent domain is expressly conferred upon the city as a corporate entity. (Rem. & Bal. Code § 7768; P. C. 171 § 31). The procedure for exercise of that power is particularly prescribed.

"When the corporate authorities of any such city shall desire to condemn land . . . such city shall provide therefor by ordinance," etc. (Rem. & Bal. Code, § 7769; P. C. 171 § 33).

and again:

"Whenever any such ordinance shall be passed by the legislative authority of any city for the making of any improvement authorized by this act . . . which will require that property be taken or damaged for public use, such city shall file a petition," etc. (Rem. & Bal. Code, § 7770; P. C. 171 § 35).

and again:

"Such petition shall contain a copy of said ordinance," etc. (§ 7771; P. C. 171 § 37).

It is obvious, from these provisions, that no matter what administrative officer or board is entrusted by the city with the purchase of lands for, and the laying out, management, and control of, its streets, parks and boulevards, it is only the city as a corporate entity, and only through its legislative authority *by ordinance,* that can finally declare what property is necessary to be taken by condemnation for any of these purposes. It matters not that the council's deter-

mination is, under the city charter, based exclusively upon
the requirements and notice of the park board, in case of land
to be taken for public parks, it is none the less the corporate
action of the city as a corporate entity, and through the
*legislative authority of the city,* and *by ordinance,* that, un-
der the statute, makes that final determination of the ques-
tion of public necessity which, in the absence of fraud, is con-
clusive upon the courts.

"When the taking is by a municipal corporation, it usu-
ally must be authorized by a vote of the governing body,
and this must be passed in such manner and by such formali-
ties as are required by law. No general rule can be laid
down, except that the statute must be strictly complied
with." 2 Lewis, Eminent Domain (3d ed.), § 506.

In the absence of any allegation or proof of fraud, the
courts will presume that this, the most formal, solemn and
authoritative declaration of which the corporate entity is ca-
pable, was based upon all of the antecedent executive, admin-
istrative and quasi-judicial investigation, consideration and
determination prescribed by the charter or by law. It is this
final corporate declaration, the ordinance, which alone is re-
quired by the state in prescribing the procedure, to be set
out in the petition invoking and setting in motion the exer-
cise of the power of eminent domain by the city. *State ex
rel. Kent Lumber Co. v. Superior Court,* 35 Wash. 303, 77
Pac. 382.

The ordinances here in question found and declared the ul-
timate fact with which alone the court was concerned, name-
ly, that the property sought to be taken was necessary for
public park purposes. Neither the truth nor the good faith
of this declaration would have been added to, or more con-
clusively established, in the absence of some charge of fraud,
by a recital in the ordinance of all of the evidential facts
upon which it was based. Even had fraud been charged, the
evidence offered was sufficient to negative that charge. It
showed that the land sought was required to connect two

other tracts of land which had been donated to the city for
park purposes, and which could only be retained by securing
the property here sought for use and improvement in con-
nection therewith.   It showed that the park board, with its
request for the condemnation, had reported to the city coun-
cil the facts of which the park board was possessed as to the
necessity of this land for park purposes.   These offers were
from the files and records of the park board, duly identified.
They were clearly admissible.   *Nickeus v. Lewis County*, 23
Wash. 125, 62 Pac. 763.   The offers showed that a commit-
tee appointed by the city council, consisting of the commis-
sioner of public works, the city engineer, and the commission-
er of public utilities, had carefully investigated and reported
to the city council, recommending that the request of the
park board be granted.   This offer was from the files of the
city clerk.   All of this evidence was admissible, though not
in terms referred to in the ordinances for condemnation.   *In
re Queen Anne Boulevard*, 77 Wash. 91, 137 Pac. 435.
The evidence offered was ample to show a reasonable ne-
cessity for the use of this land for park purposes within a
reasonable time, and that the taking was sought in good
faith to meet that necessity.   A reasonable necessity, not an
absolute necessity, is all that is required in any case.   A re-
cital of all of these things in the ordinances would not have
dispensed with their proof in the face of a charge of fraud.
The recital in the ordinances would not have added to its
presumed verity in the absence of such charge.

We have examined authorities cited in this connection from
other jurisdictions, but deem it unnecessary to review them,
since we conceive that our own statute and our own decisions
are decisive of the sufficiency of the ordinance and of the of-
fered evidence to establish the public use and necessity.

It was not incumbent upon the city to show an immediate
necessity for an immediate use.   The showing of a reason-
able necessity for use in a reasonable time is all that can be
required.   A municipal corporation has the same right to be

provident and forehanded in the acquirement of property for a public use that a public service corporation has. *Tacoma v. Nisqually Power Co.*, 57 Wash. 420, 107 Pac. 199. We have recently held that a railroad company may condemn for terminals in anticipation of its needs for a term of years. *Neitzel v. Spokane International R. Co.*, ante p. 30, 141 Pac. 186. See, also, *State ex rel. Weyerhaeuser Timber Co. v. Superior Court*, 71 Wash. 84, 127 Pac. 591. We know of no reason why a less liberal rule should be enforced against the city.

The judgment is reversed, and the cause is remanded for further proceeding in accordance with the views here expressed.

CROW, C. J., MAIN, CHADWICK, and GOSE, JJ., concur.