Argued December 6, 1961, affirmed February 7, 1962

# STATE HIGHWAY COMMISSION *v.* HURLIMAN ET UX

368 P. 2d 724

*George P. Winslow,* Tillamook, argued the cause for appellants. On the brief were Winslow & Winslow, Tillamook.

*J. Robert Patterson,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Robert Y. Thornton, Attorney General, and L. I. Lindas, Assistant Attorney General, Salem.

Before MCALLISTER, Chief Justice, and ROSSMAN, PERRY, GOODWIN and LUSK, Justices.

ROSSMAN, J.

This is an appeal by the defendants who are husband and wife from a judgment entered by the circuit court in an eminent domain proceeding instituted by the state acting through its Highway Commission to condemn for highway purposes approximately 2.3 acres of the defendants' dairy farm. The jury found that the value of the land taken together with damages to the remainder was $5,000. The complaint alleged that $4,000 was the maximum sum to which the defendants were entitled. The answer alleged that the just amount that should be paid to the defendants was $11,480. Since the verdict was in a sum larger than that tendered the trial judge awarded the defendants the additional sum of $650 as compensation for their attorney's services.

The defendants, in appealing, submit seven assignments of error. The first of them reads:

"That the court erred in rejecting defendants' request for conclusion of law No. 2 reading as follows:

"That the description and the amount of land, sought to be condemned in this proceeding, is so indefinite, uncertain, ambiguous and vague that the amount of said land cannot be ascertained and said land cannot be identified with any degree of certainty; that no evidence was offered, during the trial of this cause, which would be sufficient to identify said land or the amount thereof and this proceeding should be dismissed."

The second follows:

"That the court erred in overruling defendants' motion to require plaintiff to make more definite and certain the description of the property sought to be condemned."

The defendants' brief states that both of those assignments of error "involve the same questions" and argues them together.

The third assignment of error states:

"The court erred by admitting in evidence resolution dated March 10, 1960, Ex. 1."

The fourth assignment of error submits this contention:

"That the court erred by admitting in evidence the letter from Highway Commission to defendants dated Jan. 30, 1959, Ex. 3, and register receipt, Ex. 2, showing letter received by defendants Feb. 5, 1959."

The fifth states:

"That the court erred in rejecting defendants' request for conclusion of law No. 1 reading as follows:

"That plaintiff failed, in all respects, to comply with the provisions of Sections 366.370 and 366.375, ORS prior to the filing of this action and that by reason of such failure plaintiff was not authorized to commence and prosecute this action and this action should be dismissed."

The defendants' brief explains that the three assignments of error last quoted "involve substantially the same and similar questions and will be discussed together." We will so treat them when we analyze them.

The sixth assignment of error presents this contention:

"That the court erred in refusing to give defendants' requested instruction IV reading as follows:

"I instruct you that in considering the depreciated value of defendants' property, you have a

right to take into consideration any risk, hazard, danger, and any interference in the use, if any, in the operation and use of defendants' property resulting from the taking, and if you find that as a result of the taking of defendants' property, there is a reasonable possibility of injury to persons or to animals and other property, which would cause a prospective purchaser to pause and, on that account, seek a lower purchase price, you would have a right to take these matters into consideration in determining the depreciated value of defendants' property."

The seventh assignment of error states:

"That the court erred in refusing to give defendants' requested instruction No. V, reading as follows:

"In arriving at the depreciated value of defendants' property you should take into consideration the continuing power, of the State Highway Commission, to change grades of said highway, relocate the same upon the land taken, regulate and direct traffic over said highway and to allow defendants compensation on account of said matters and any other use of said highway or a change in the same that the plaintiff, State Highway Commission, could lawfully do."

Before analyzing the assignments of error we will mention some additional facts.

The defendants own a dairy farm 55 acres in extent in Tillamook County and have forty cows. An old county road which many years ago was incorporated into the state's secondary highway system cuts the farm into two segments. The purpose of this proceeding was to secure for the state 2.3 acres of the defendants' land so that the Highway Commission could improve the facilities afforded by the old road. The improvements were completed before the case was

tried in the circuit court and the new road was at that time in use. The condemnation proceeding sought not only 2.3 acres of the defendants' land but also whatever interest the defendants had by way of reversion in the old county road. The part of the latter which crossed the defendants' land was about two acres in extent.

The defendants deemed that the part of their land which lay on the side of the road opposite from their home and milking barns afforded for eight months of the year superior pasturage and, therefore, they drove their cows across the road four times each day during eight months of the year. Since the old road was improved to a width of only thirty feet and was winding, thereby precluding fast traffic, the defendants did not find that the task of driving their cows across it was difficult or hazardous. But the improved road has a greater width, is comparatively straight, and a part of it which passes over the defendants' property is 190 feet wide for a short stretch. At that point the defendants cross it with their cows. They contend that driving their cows across the new road is difficult and hazardous. They therefore argue that they are entitled to compensation not only for the land taken but also for damages to the remainder caused by the alleged increased hazard. We add that the matters just mentioned were submitted to the jury. The state offered no evidence upon the subjects of damage and land value. Those issues were resolved upon the evidence presented by the defendants.

■ We will now turn to the assignments of error. We have quoted them. The first two are based upon contentions that the description of the property which the state sought was "so indefinite, uncertain, ambiguous and vague" that the defendants could not identify

the land which the state sought. The complaint described the defendants' farm by metes and bounds. The defendants do not criticize that description. After the complaint had described in the manner just indicated the entire farm it then described in the following terms the part which the plaintiff sought to acquire:

"A parcel of land lying in Section 9, Township 5 South, Range 10 West, Willamette Meridian, Tillamook County, Oregon, and being a portion of that property described in that deed to Anton Hurliman and Margaret Hurliman, recorded in Book 155, Page 168 of Tillamook County Records of Deeds, the said parcel being that portion of said property included in a strip of land variable in width, lying on each side of the center line of the Little Nestucca Highway as said highway has been relocated, which center line is described as follows:

"Beginning at Engineer's center line Station 71+00, said Station being 38.8 feet North and 24.6 feet East of the center of said Section 9; thence South 5° 06' West, 508.73 feet; thence on a spiral curve left (the long chord of which bears South 0° 36' 08" West) 450 feet; thence on a 954.93 foot radius curve left (the long chord of which bears South 20° 44' 45" East) 411.53 feet; thence on a spiral curve left (the long chord of which bears South 42° 05' 38" East) 450 feet; thence South 46° 35' 30" East, 1579.74 feet to Station 105+00, the Northeasterly line of said strip of land crossing the Northerly line of said property approximately opposite Station 71+35.

"The widths in feet of the strip of land above referred to are as follows:

| Station to Station | | Width on North-easterly Side of Center Line | Width on South-westerly Side of Center Line |
|---|---|---|---|
| 71+00 | 76+08.73 | 40 feet | 40 feet |
| 76+08.73 | 78+00 | 40 feet in a straight line to 45 feet | 40 feet |

| Station to Station | | Width on Northeasterly Side of Center Line | Width on Southwesterly Side of Center Line |
| --- | --- | --- | --- |
| 78+00 | 80+58.73 | 45 feet in a straight line to 50 feet | 40 feet |
| 80+58.73 | 84+70.26 | 50 feet | 40 feet |
| 84+70.26 | 87+00 | 50 feet in a straight line to 45 feet | 40 feet |
| 87+00 | 89+20.26 | 45 feet in a straight line to 40 feet | 40 feet |
| 89+20.26 | 104+00 | 40 feet | 40 feet |

"Also that portion of said property lying Southwesterly of said center line, easterly of the existing Little Nestucca Highway and northerly of a county road running easterly and westerly through the South half (S½) of said Section 9.

"The parcel of land to which this description applies contains 2.30 acres, outside of the existing right of way."

It will be noticed that the description of the 2.3 acre parcel which the state sought to acquire employed in large part a center line which the pleading traced from a point beginning at one side of defendants' land to a point where it departed from the other side. The line itself was marked out in an unmistakable manner. The width of the desired tract was measured in feet. We take the following from 29 CJS, Eminent Domain, § 259, page 1228.

"* * * By some authorities it is held necessary and sufficient to describe the land with as much certainty as would be necessary in a conveyance, that is, sufficiently to enable a surveyor, or other person skilled in locating land, or any person familiar with the locality, to locate the property readily. * * *"

ORS 366.380 says:

"The complaint in the action or proceeding

\* \* \* shall describe the real property \* \* \* sought to be condemned \* \* \*."

It does not denote the detail with which the property must be described. *Hamilton et al v. Rudeen et al,* 112 Or 268, 224 P 92, ruled:

"\* \* \* The description in a deed of land conveyed must be sufficiently definite and certain to enable the land to be identified or to furnish the means of identifying the land under the maxim, *Id certum est quod certum reddi potest* (That is certain which may be rendered certain): See 2 Devlin on Deeds (3 ed.), § 1010. Nothing appears in the evidence which would cause any surveyor the slightest difficulty in tracing upon the ground from the description given the exterior boundaries of the proposed district, and for that reason the description is sufficiently definite and certain. \* \* \*"

18 Am Jur, Eminent Domain, § 325, page 969, states:

"\* \* \* A description by metes and bounds is sufficient if the property described can be readily located by anyone familiar with the locality. When it is sought to condemn a right of way, the courses and distances should be given, and definite and fixed termini should be indicated. \* \* \*"

We are satisfied that the description employed in the complaint would enable anyone familiar with the defendants' farm to locate this property. The first two assignments of error are without merit.

■ We shall now consider the third, fourth and fifth assignments of error. It will be recalled that the defendants-appellants' brief, in referring to them, states that "they involve substantially the same and similar questions" and argues them jointly. An understand-

ing of the contentions submitted by these assignments of error will be facilitated, we believe, if we set forth some additional facts and the governing statutes. The third assignment of error complains because the trial judge received as evidence a resolution adopted by the Highway Commission March 10, 1960. The resolution was of the kind which ORS 366.370 renders necessary in proceedings such as this.

> "(1) Whenever in the judgment of the commission it is necessary to acquire real property for any of the purposes for which the commission is authorized by law to acquire real property, the commission may, after first declaring by resolution that the real property is necessary and the purpose for which it is required, attempt to agree with the owner of any interest in the real property with respect to the compensation to be paid therefor, and the damages, if any, for the taking thereof.

> "(2) The resolution of the commission is conclusive evidence of the public necessity of the proposed public improvement or project, that the real property, or interest therein, is necessary therefor and that the proposed improvement or project is planned or located in a manner which will be most compatible with the greatest public good and the least private injury."

It will be noticed that the resolution in question was not adopted until March 10, 1960. The complaint in this case was filed February 4, 1959, thirteen months before the resolution was adopted. However, the amended complaint, upon which the case was tried, was filed May 23, 1960. Upon the offer of the defendants the circuit court received as evidence some excerpts of minutes of meetings of the Highway Commission which pertained to this improvement. The excerpts bear the certificate of the secretary of the commission that they are true and correct. They begin

with a meeting of the commission that was held June 23, 1932, and run beyond one that was held December 11, 1958. In the meeting last mentioned the commission, according to the minutes, "approved the following surveys by adopting the attached resolutions relative thereto marked Exhibits 'J-1' through 'J-3' which resolutions by this reference are made a part hereof." One of the resolutions, as disclosed by the minutes, was for the improvement of the "Meda Loop Section of the Little Nestucca Highway in Tillamook County," being the highway with which this proceeding is concerned. Thus, on December 11, 1958, the commission, by a resolution, ordered the inauguration of this improvement. The group of minutes to which we referred mentioned in part efforts which the defendants and their neighbors made to persuade the Highway Commission to improve this road. The minutes indicate that the defendant Anton Hurliman attended at least one of the meetings that occurred prior to December 11, 1958, when consideration was given to petitions for improvement of the road.

The trial court file (Rule 3 of this court) which the defendants filed in this court when they became appellants contains a copy of a resolution adopted by the Highway Commission January 22, 1959, thirteen days before the original complaint was filed in this case. That resolution orders the improvement which was made to the road. One of its directives is this: "The Legal and Right of Way Department is directed to attempt to agree with the owners and other persons in interest of said parcels of real property as to the compensation to be paid for the taking * * *." The resolution is couched in language precisely the same as the resolution of March 10, 1960, with the exception of its date and the fact that it does not men-

tion the construction of a fence and the placing of a 12 inch concrete pipe conduit under the roadway. The new fence seemingly was necessitated by the destruction of an existing fence in the construction work. When the commission augmented the improvement of the highway by directing the construction of the fence and the placing of the conduit it adopted the resolution of March 10, 1960, and at the same time amended its complaint by mentioning those two additional features. The resolution of March 10, 1960, is sometimes referred to as the amended resolution. It is plain from the attitude announced by the defendants' counsel at the very beginning of the trial that he did not believe that the addition of the fence and the conduit were of interest to the defendants. Before the jury was empaneled the plaintiff's counsel stated that normal procedure required the plaintiff to present evidence showing that it negotiated with the defendants for the purchase of their property. Next he explained that the addition of the fence and the conduit to the construction work led to the adoption of the resolution of March 10, 1960, together with the filing of the amended complaint. At that point the trial judge declared:

> "Well, if the Amended Complaint doesn't enlarge or change the manner of taking in such a way that it affects the pecuniary interest of the defendants, I don't think it would make any difference whether the negotiations took place before or after the filing of the Amended Complaint; but if there was an enlargement of the taking, or a change in the manner of the taking that in some material way would affect the pecuniary interest of the defendants, I would be inclined to think that any negotiations that took place before there was a supporting resolution would be of no legal consequence."

Shortly, defendants' counsel stated:

"* * * I think we're making a big mountain out of a molehill. They have to show an original offer of negotiations in order to prevent defendants in any case recovering costs and attorneys' fees. And what we are arguing on may just, in the long run, in effect have that bearing on the case. * * *"

■ The original complaint which, as we have said, was filed February 4, 1959, referring to the improvement of the road, alleged "prior to the commencement of this action the plaintiff by resolution so declared." It seems reasonable to infer that the quoted words referred to the resolution adopted January 22, 1959.

It will be recalled that ORS 366.370 (2) states:

"The resolution of the commission is conclusive evidence of the public necessity of the proposed public improvement or project, that the real property * * * is necessary therefor * * *."

*Moore Mill & Lumber Co. v. Foster,* 216 Or 204, 336 P2d 39, 337 P2d 810, and *City of Eugene v. Johnson,* 183 Or 421, 192 P2d 251, establish that the necessity for the taking of property is a question of law for the court and not one of fact to be decided by the jury. They also hold that if necessity is made an issue it should be settled by the court before the jury is empaneled. The trial judge followed the procedure delineated in those decisions. When he ruled that necessity had been shown the record afford him knowledge of the three resolutions to which we have referred. It may be that the second, being the one that was adopted thirteen days before the complaint was filed, was not actually introduced in evidence; but it bears the clerk's certificate showing that it was filed

and it constitutes a part of the trial court file. We, therefore, conclude that the trial judge was authorized to rule that the part of the defendants' property described in the complaint was necessary for the state's purposes.

The defendants argue that the record fails to show that the plaintiff sought in good faith to purchase the property prior to the commencement of this action. ORS 366.370 states:

"Whenever in the judgment of the commission it is necessary to acquire real property for any of the purposes for which the commission is authorized by law to acquire real property, the commission may, after first declaring by resolution that the real property is necessary and the purpose for which it is required, attempt to agree with the owner of any interest in the real property with respect to the compensation to be paid therefor, and the damages, if any, for the taking thereof."

ORS 366.375 declares:

"If the commission is unable to agree with the owner of any interest in the real property referred to in ORS 366.370 * * * the commission may commence and prosecute to a final determination any necessary or appropriate suit or action for the state in the name of the state, by and through the commission * * * for the condemnation of such interests as the owner may have in the real property * * *."

Legislation of that kind springs from the fact that the legislature prefers that the state shall acquire the property it needs by purchase, if possible, rather than by expensive and time consuming litigation.

■ The fourth assignment of error, which the defendants-appellants argue concurrently with the third and the fifth, asserts that the court erred "by admit-

ting in evidence the letter from Highway Commission to defendants dated Jan. 30, 1959, Ex. 3, and register receipt, Ex. 2, showing letter received by defendants Feb. 5, 1959." The letter of January 30, 1959, was addressed to the defendants, was signed by counsel for the Highway Commission and offered the defendants $4,000 for the property rights with which this proceeding is concerned. The plaintiff presented it for the purpose of showing that it negotiated for the property before filing this action. The resolution adopted by the commission January 22, 1959, instructed the commission's legal department "to attempt to agree with the owners" for the purchase of the property. However, the "register receipt" to which the assignment of error refers, shows that the letter of January 30, 1959, was not delivered to the defendants until February 5, 1959, one day after the original complaint was filed. Therefore, the letter could not serve the purpose for which the plaintiff offered it. However, since other evidence showed that the plaintiff was willing to pay $4,000 for the property the erroneous admission of the letter into evidence did not prejudice the defendants.

The plaintiff calls attention to ORS 41.365 (15) which creates a disputable presumption that "official duty has been regularly performed" and argues that therefore it must be presumed that negotiations were pursued after the adoption of the resolution. The plaintiff asks us to take judicial notice that it commences negotiations for property immediately following its action in ordering acquisition and that a letter such as the one of January 30, 1959, is written only after previous negotiations have failed and a formal record thereof is desired. Preceding the empanelment of the jury and while plaintiff's counsel was express-

ing a purpose to offer proof of negotiations there developed the episode in which defendants' counsel made the statement that we have already quoted about "making a big mountain out of a molehill." At that juncture, so far as may be gleaned from the record, attention was diverted from the plaintiff's announced purpose and the testimony was never presented. Without either accepting or rejecting the contention concerning the presumption we prefer to rest our decision upon a different approach, to which we now turn.

██ The answer contravened the averments of the complaint which stated that the part of the defendants' farm described in the complaint was "necessary for a public use for right of way purposes for the widening in part, relocation in part, construction, improvement and maintenance of the Meda Section." It denied allegations which stated "prior to the commencement of this action * * * the plaintiff by resolution so declared." We have noted that the adoption of a condemnation resolution is a condition precedent to the filing of an eminent domain proceeding and that unless such a resolution is adopted the commission has no power to acquire the property and the court to which it resorts has no jurisdiction to entertain its suit. Not only did the defendants make the denials of which we have taken notice, but they asserted that the description employed by the state of the part of the defendants' property which it wished to acquire was so "vague" that the defendants were unable to identify it. Their brief states, "If the owners are unable to ascertain, from the description, what land the Commission wants to buy and the quantity there can be no negotiation to buy." It cites an authority in support of its position. When an owner is hostile to the state's acquisition of his property and negates

its power to acquire the property it is impossible to perceive that good could come from negotiations with him.

We take the following from 18 Am Jur, Eminent Domain, § 319, page 962:

"* * * Where the owner contests on the merits, he waives the objection of failure to attempt to agree on compensation * * *."

Nichols on Eminent Domain, 3d ed, § 62 (1), states:

"The cases dealing with the question of compliance with the statutory requirement of preliminary ineffectual negotiations demonstrate that the courts do not require the doing of a futile act. Despite the mandatory character of the condition, failure to negotiate is excusable where such negotiations would be useless. Thus, legal incapacity, absence of the owner, the state of the title, or the fact that an agreement with the owner is subject to further agreement with or approval by others may be sufficient to show the futility of negotiations."

Jahr, Eminent Domain, § 196, declares:

"Although the requirement of negotiation contained in the statute is mandatory, compliance will be excused where such negotiations would be futile and useless, as for example, where the owner can not be found, where the owner is under legal disability, and in some cases where the owner is a nonresident * * *."

We take the following from 29 CJS, Eminent Domain, § 224, page 1163, at page 1165:

"Notwithstanding the general rule that statutes of the type here considered are mandatory, it has been held or recognized that want of negotiations to purchase or to agree on compensation or damages will be excused where such negotiations would be useless * * *."

*Town of West Hartford v. Talcott,* 138 Conn. 82, 82 A2d 351, states:

"In support of the contention of the defendants that the court's conclusion that the plaintiff took the preliminary steps essential to the institution of these proceedings is unwarranted, they argue that the plaintiff failed to establish inability to agree with the defendants upon the amount to be paid for the property to be condemned. By its express terms, § 7181 applies only 'in case those desiring to take such property cannot agree with the owner upon the amount to be paid him for any property thus taken.' Inability to agree is a condition precedent to relief under the statute. Stafford Springs Street Ry. Co. v. Middle River Mfg. Co., 80 Conn. 37, 42, 66 A. 775; Connecticut College v. Alexander, 85 Conn. 602, 605, 84 A. 365, 366. It is incumbent upon the condemnor to exhaust 'all reasonable efforts to obtain the land it desires by agreement.' New York, N. H. & H. R. Co. v. Long, 69 Conn. 424, 438, 37 A. 1070, 1074. The above recital of the negotiations carried on by the parties and of the final termination thereof, primarily because of the plaintiff's refusal to accede to the defendants' demand for a rezoning of a part of their property, sufficiently establishes inability to agree upon the amount to be paid for the property and satisfies the requirement of the statute.   *   *   *"

*Calcasieu & S. Ry. Co. v. Kinder Canal Co.,* (La App) 69 So 2d 537, reasoned:

"Assuming, for the sake of argument, that the petitioner did not tender any specific sum to defendant for the desired right of way, the testimony of the president of the defendant corporation indicates that any reasonable offer would have been refused by defendant. Under the doctrine as set forth by the Supreme Court in Louisiana Highway Commission v. Bullis, 197 La. 14, 200 So. 805, the lower court held that a formal tender is not required, where it would be of no avail. We concur in

this reasoning and agree that the plea of prematurity was properly overruled."

We take the following from *State v. Superior Court,* (Wash) 91 P 637:

"* * * In any event, even if it were construed as relator contends, this record shows that the relator wholly denies the right or power to condemn at all in this instance, and an effort to agree upon damages under such circumstances would have been fruitless. The case is therefore analogous to the absence of a tender of performance of an obligation when the facts show that a tender would have been fruitless. In such a case the tender may be excused. Under either view of the statute, relator is not entitled to urge this point."

*State ex rel Burrows v. Superior Court,* 48 Wash 277, 93 P 423, 17 LRA(NS) 1005, 125 Am St Rep 927, states:

"* * * There is no merit in another suggestion made by the relators that the respondent can not condemn because it did not, prior to the commencement of these proceedings, endeavor to obtain by purchase the rights and privileges it now seeks to appropriate. The evidence shows that such endeavors were made by a respondent; but even though the contrary appeared, yet the position of the relators in this proceeding will not permit him to now present any such objection."

In *State v. Superior Court,* 47 Wash 397, 92 P 269, the court said:

"It is objected that the court erred in finding that the petitioner and the owners had been unable to agree as to the amount of compensation to be paid for the property rights sought to be appropriated. In State ex rel. Skamania Boom Co. v. Superior Court, 91 Pac. 637, we held that, when a defendant in a condemnation proceeding takes the position that the petitioner has no right to con-

demn, the question of inability to agree as to compensation thereafter becomes immaterial. Such being relators' position here, it is immaterial what the court found upon that subject."

*State v. Superior Court for Kitsap County,* 194 Wash 7, 76 P2d 990, is cited several times by the defendants. A part of it which they leave unmentioned reads:

"We have also held that negotiation with the owner prior to the institution of condemnation proceedings is not a condition precedent when the owner of the property denies the right of the petitioner to take it. State ex rel. Skamania Boom Co. v. Superior Court, 47 Wash. 166, 91 P. 637; State ex rel. Wilson v. Superior Court, 47 Wash. 397, 92 P. 269."

■ It is our belief that the attitude of the defendants whereby they denied that the plaintiff had any right to take their property indicates that efforts to agree with them would have been fruitless. When an owner adopts an attitude such as that taken by defendants he presents a case to which ORS 366.370 and 366.375 are inapplicable. Those sections of our laws were intended to protect owners from litigation if they were willing to negotiate; but when an owner spurns negotiation and denies that his property is subject to condemnation, litigation is inevitable.

The sixth assignment of error is based upon the refusal of the trial judge to have given the requested instruction which is incorporated in this assignment of error. The instructions given to the jury fully stated the rules governing the amount of award in a case such as this. They did not employ the precise words in which the defendants couched their requested instruction, but that was immaterial. They stated the

needed rules fully and with clarity. Although the defendants commend their requested instruction as a good statement of law, the only fault which they attribute to the instruction given is that the latter employs the word "annoyance" and did not resort to the words "risk, hazard, danger, and any interference in the use" which constitute a part of the requested instruction. The instruction given employed the terms "annoyance, disadvantage and necessary expense resulting from the taking  *  *  *  adequate to compensate the owners for all time to come for the most injurious use of the land taken reasonably probable to which the State Highway Commission might lawfully put the same." We do not believe that this assignment of error reveals merit.

■ The seventh assignment of error which incorporates within itself the requested instruction upon which it is based is quoted in a preceding paragraph. Had it been given it would have authorized the jury to augment the damages to the remaining tract if the jury forecast a change of grade at some future time. Evidence upon which an award of that kind might have been based was wholly absent from the case. In fact, the evidence does not intimate whether a change of grade would have been beneficial or detrimental to the property. So far as the evidence indicates, no one entertains any thought of a change of grade. Accordingly, the requested instruction would have authorized unconfined speculation in the award of damages. We find no merit in this assignment of error.

The above disposes of all the assignments of error. We have found no merit in any of them. It is our belief that the case was fairly tried.

The judgment of the circuit court is affirmed.