[No. 13792.  Department Two.  January 27, 1917.]

## *In Re* YESLER WAY, SEATTLE.[1]

EMINENT DOMAIN—PURPOSES—STREETS — TERMINI — LEGISLATIVE
QUESTION.  Condemnation for a public street cannot be objected to
on the ground that the street terminates at a privately owned pier,
since the location, route and termini are purely legislative questions
beyond the control of the court.

SAME—BY CITY—DECISION TO CONDEMN—FINALITY.  The decision
of the legislative body of a city to condemn property, in a proper
case, is final and cannot be reviewed by the court.

SAME—AUTHORITY—PURPOSES — "BRIDGES," "VIADUCTS" AND "AP-
PROACHES"—STATUTES.  A city having power to construct bridges and
viaducts under Rem. & Bal. Code, § 7507, and to take and damage
property for bridges and approaches under Id., § 7768, it may con-
demn the right to impose upon a street, already permanently im-
proved, an overhead crossing reached by an inclined plane, extend-
ing partly over the street and partly over the sidewalk; since the
same may properly be called either a bridge or a viaduct and the
inclined plane is an "approach."

Appeal from a judgment of the superior court for King
county, Dykeman, J., entered June 20, 1916, dismissing a
condemnation proceeding, after a hearing before the court.
Reversed.

*Hugh M. Caldwell* and *Robert H. Evans*, for appellant.

*Saunders & Nelson*, for respondents Gustavson *et al.*

*Hughes, McMicken, Dovell & Ramsey*, for respondent
Yesler Estate, Incorporated.

HOLCOMB, J.—Seattle, a city of the first class, by an
ordinance [No. 34,994] duly enacted, declared that the "pub-
lic necessity, convenience and safety demand that an over-
head *viaduct and bridge* be constructed along the south side
of Yesler Way and over and across Railroad avenue from
the westerly margin of Railroad avenue"; declared the im-
provement to be of special benefit to certain lands, premises

[1]Reported in 162 Pac. 536.

and other property; laid out and established the route thereof, beginning at a certain line in the west margin of First avenue south and nine feet in width along the south side of Yesler Way and terminating "with a connection with the elevated entrance to Pier No. 1 on the west side of Railroad avenue;" ordered the condemnation and the ascertainment of the compensation and damage to all persons interested and payment thereof according to law, and that the costs of the improvement be paid for by special assessment upon the property specially benefited, in the manner provided by law, all costs for the improvement not covered by the special benefits and assessments therefor to be paid from the general fund of the city.

The power to make this improvement is claimed by the city by virtue of Rem. & Bal. Code, § 7507, particularly under subdivision 12 thereof, which is as follows:

"Any such city shall have power:   .   .   .
"(12).   To construct and keep in repair bridges, viaducts, and tunnels, and to regulate the use thereof."

The power to condemn for this improvement is asserted under the provisions of Rem. & Bal. Code, § 7768, which is in part as follows:

"Every city of the first, second and third classes   .   .   . is hereby authorized and empowered to condemn land and property   .   .   .   for streets, avenues, alleys, highways, *bridges, approaches,*   .   .   .   and for the opening and widening, widening and extending, altering and straightening of any street, avenue, alley or highway, and to damage any land or other property for any such purpose or for the purpose of making changes in the grade of any street, avenue, alley, or highway,   .   .   .   and to condemn land and other property and damage the same *for any other public use* after just compensation having been first made or paid into court for the owner in the manner prescribed by this act."

Section 7769, Rem. & Bal. Code, directs that such improvement shall be provided for by ordinance, specifying the manner of paying for the same, and that, if so ordained, the im-

provement may be paid for wholly or in part by special assessments against property specially benefited, with a proviso that "No special assessment shall be levied under authority of this act except when made for the purpose of streets, avenues, alleys, or highways or alterations thereof or changes of the grade therein, or other improvements in or adjoining the same, or for bridges, approaches," etc. Sections 7779-7798, Rem. & Bal. Code, provide the proceedings in the superior court to condemn, adjudicate the compensation and damages to all persons affected, assess the special benefits, hear objections to the special assessments, confirm or modify the special assessment roll, and enter final judgment.

The city instituted the condemnation proceedings in the superior court, which, after a hearing on the preliminary question as to a public use and necessity, dismissed the proceedings because the statute governing condemnation in such case does not contain the word "viaducts," and the court thought that the rule of strict construction applicable to eminent domain statutes, followed by this court from *Tacoma v. State*, 4 Wash. 64, 29 Pac. 847, to *State ex rel. Wauconda Inv. Co. v. Superior Court*, 68 Wash. 660, 124 Pac. 127, Ann. Cas. 1913E 1076, controlled here. The plan of the city for this improvement called for an inclined plane, nine feet in width, rising from the initial point, passing at an incline respondents' properties on the south side of Yesler Way, partly in the street proper and partly over the existing sidewalk on which the properties affected abut, attaining an elevation of thirty-two feet at the easterly margin of Railroad avenue, spanning that street and proceeding on about the same level (declining only five feet) to the termination at the elevated entrance of Pier No. 1 on the west side of that street. Pier No. 1 is private property, though used by the public for access to water carriers, and also adjoins the public street called Railroad avenue.

Great stress is laid by respondents upon the private character of the terminus of the proposed improvement. This we deem unimportant. If the proper legislative body of the city had power to order such improvement as is here contemplated, under the statutes relied upon, the questions of the location, route and termini are legislative questions purely with which courts have no concern.

The legislative body, by proper proceedings, declared the public necessity for the improvement. That, in a proper case, when the power so to do is clearly conferred, its action in so doing is final and not a reviewable question has been so often and consistently held by this court that it needs no citation. But the respondents assert that the streets upon which this improvement is to be imposed have been laid out, established and permanently improved, that there can be no public necessity for imposing an additional improvement of the character proposed, and that the contemplated use is not really public. This claim is akin to that of the question as to what power the city actually and legally has. Referring to the statutes hereinbefore quoted, it is seen that it has power to construct bridges and viaducts; that, by the eminent domain procedural statutes quoted, it has power of eminent domain to take and to damage real and other property for bridges and approaches. While strict construction of the eminent domain powers of municipal corporations is salutary and is the policy of the courts of this state as evidenced by numerous decisions, no such restrictive strict construction of the terms "viaducts" and "bridges" as was applied by the trial court has ever been intimated. "Viaduct" is defined: "A bridge-like structure . . . to carry a roadway or the like over a valley or ravine, or across another roadway." New Standard Dictionary. "Bridge" is defined as "a structure erected across a waterway, ravine, road, or the like, serving for the passage of persons, animals or vehicles," etc. New Standard Dictionary. These are the common acceptations and meanings of the words. *Argentine v. Atchison, T. & S. F. R. Co.,* 55

Kan. 730, 41 Pac. 946, 30 L. R. A. 255. No violence to the sense of the nature of the structure under consideration is done by calling it either. Furthermore, the span across Railroad avenue could be called either a bridge or a viaduct without question; the incline from the initial point is certainly an "approach"; an approach to make the bridge traversable is obviously necessary, and the city undoubtedly has the power, by reference to § 7768, *supra*, to condemn and damage land for bridges and approaches, for the public use.

The judgment is reversed, and the cause remanded for further proceedings.

MORRIS, PARKER, MOUNT, and FULLERTON, JJ., concur.