[No. 24278.   Department Two.   February 21, 1933.]

THE STATE OF WASHINGTON, *on the Relation of the Department of Public Works, Appellant,* v. NORTHERN PACIFIC RAILWAY COMPANY *et al., Respondents.*[1]

*The Attorney General* and *John C. Hurspool,* for appellant.

*L. B. daPonte, Thos. H. Maguire, A. C. Spencer, F. T. Merritt,* and *Carey, Hart, Spencer & McCulloch,* for respondents.

[1]Reported in 19 P. (2d) 128.

STEINERT, J.—This is an appeal from an order granting a petition for the removal of a cause from the superior court of Thurston county to the United States district court. The case is before us upon appellant's petition for writ of mandate to enforce an order formerly made by the department of public works, and respondents' counter-petition for removal. We shall hereinafter refer to appellant's pleading as the complaint, and to that of the respondents as the petition.

According to the complaint, it appears that the department of public works of Washington, which we will hereinafter refer to as the department, in cause No. 6013 before it, entered upon an investigation of the rates for the carriage of grain and grain products within the state of Washington; the investigation was made in conjunction and connection with a general investigation of such rates in the western portion of the United States, conducted at the same time by the Interstate Commerce Commission. As a result of the dual investigation, the *commission* found that the existing rates between certain points within the state were excessive, and thereupon established new and lower rates for such transportation, effective August 1, 1931, and canceling previously existing rates. Later, the commission vacated the order establishing and fixing such new and lower rates, and granted a rehearing in the general investigation; this latter order authorized, but did not require, the carriers concerned to re-establish the rates existing before the new and lower rates were fixed. Up to this time the *department* had made no order with reference to *intrastate* rates.

Upon rehearing, jointly conducted by the two public bodies, the department found that the rates in excess of those stated in the findings which it then made,

over the lines of the respondent carriers between the points therein named, were, and in the future would be, unjust, unreasonable and unduly prejudicial. The department accordingly entered an order on August 13, 1932, requiring respondents to file and establish, on or before September 5, 1932, rates not in excess of those prescribed in its findings. Upon the failure of respondents to comply with the order, appellant instituted this proceeding to compel obedience thereto.

What we have just stated is gathered and taken from what appears upon the face of appellant's complaint. In order, however, to get a more comprehensive picture of the actual situation, it is necessary to extend our statement. Appellant's complaint refers to, and by such reference expressly incorporates within it, the findings and order made by the department on August 13, 1932, here sought to be enforced. Those findings are too voluminous and elaborative to set forth in detail. They may be condensed somewhat into the following statement:

On July 6, 1930, the commission, upon a general investigation of rates, including the so-called "Columbia Basin Differential", and after a hearing, rendered its decision in I. C. C. docket No. 17,000, part 7, directing the respondent carriers to revise both their interstate and their intrastate rates on grain shipped from the differential territory to Portland, Oregon, and Vancouver, Washington, and also to Puget Sound ports, in such a manner as to secure to the cities of Portland and Vancouver a differential of ten per cent. This differential had been originally established by the commission on November 3, 1930. See 59 I. C. C. 321. The differential referred to appears to have been based upon the alleged differences in traffic and transportation conditions in the movement of grain to Columbia River ports, as compared with those involved in the

movement of grain to Puget Sound ports, and the consequent difference in cost of such transportation. In 1926, or shortly before, this differential had been attacked before the commission by certain producers in the differential territory. *Walla Walla County Farm Bureau v. Northern Pacific Ry. Co.*, 107 I. C. C. 110. The relief sought in that proceeding was, however, denied by the commission, and the differential remained undisturbed. *Rate Structure Investigation,* No. 17,000, 164 I. C. C. 619, 684.

The findings referred to further show that the effective date of the above decision of the commission in docket No. 17,000, *supra,* was postponed from time to time, but that the rates were finally made effective August 1, 1931. In January, 1932, the United States supreme court directed the issuance of an injunction against the orders of the commission made in docket No. 17,000, and ordered that the cause be reopened for further investigation and consideration. *A. T. & S. F. Ry. Co. v. United States,* 284 U. S. 248. The injunctive order was based upon a showing of a radical change of economic conditions that had supervened since the close of the record before the commission. Pursuant to that decision by the supreme court, the commission, on January 23, 1932, vacated its orders with reference to rates by another order which authorized the cancellation of the previously prescribed rates and the re-establishment of the rates, rules and practices that were in effect on July 31, 1931, on ten days' notice.

In consequence of the last order, the respondent carriers thereafter re-established the old rates on interstate and intrastate traffic in Washington, effective February 20, 1932, and the same are now the published rates in this state. By order dated February 8, 1932, and March 7, 1932, the commission ordered the reopening of all the issues involved in its docket No. 17,000,

part 7, and a further rehearing was had in July, 1932. The investigation by the commission has not as yet been completed, however, and the matter of rates on grain and grain products has not yet been finally determined by that body.

The findings proceed with a statement to the effect that the public utilities commission of Oregon had refused to permit the carriers to raise Oregon intrastate rates to the level existing prior to the effective date of the order in docket No. 17,000, and that, as a result, the differential rate imposed by the commission in favor of Portland placed an undue burden upon certain persons and localities in Washington. The findings conclude with a further statement to the effect that, pending the final determination by the commission, the existing intrastate rates from the differential territory in Washington are, and will be, unjust, unreasonable and unduly prejudicial, and should therefore be reduced.

The facts contained in the findings, referred to and made a part of appellant's complaint, are also set forth generally in respondents' petition for removal, and are further amplified by other alleged facts indicating that the present action was brought for the purpose of annulling and setting aside the orders of the commission with reference to the differential formerly promulgated by it, and to anticipate the final decision and order of the commission upon its uncompleted rehearing and investigation. There is also a specific allegation in the petition to the effect that the true facts had been withheld from the complaint in order to defeat removal. Upon its face, respondents' petition, considered alone, appears to make a case for removal to the Federal court.

Upon a consideration of the record as disclosed by appellant's complaint, incorporating the findings of

the department above referred to, and respondents' petition for removal, the lower court concluded that there was involved in the action an issue as to the existence or effect of an order made by the commission involving the relation of rates between certain points in Washington and Oregon as well as intrastate rates between points in Washington; that some of those questions were determinable in the Federal court, and of which the state court had no jurisdiction. The petition for removal was accordingly granted by the lower court.

The appellant first asserts that it is the duty of the state court to determine from the complaint and the record whether the case is removable, and that, unless the case is removable, the state court does not lose jurisdiction. Respondents do not dispute this proposition. In any event, it seems to be well settled in accordance with appellant's contention. *Missouri, K. & T. Ry. Co. v. Chappell,* 206 Fed. 688; *Southern Pac. Co. v. Waite,* 279 Fed. 171; *Queensboro National Bank v. Kelly,* 15 F. (2d) 395; *Madisonville Traction Co. v. St. Bernard Mining Co.,* 196 U. S. 239; 54 C. J. p. 331, § 253.

Appellant next asserts that the question of removability must be determined from the necessary allegations of its complaint alone, unaided by the petition for removal.

Approaching the matter suggested by appellant's contention from the viewpoint of text-writers upon the subject, one would be inclined to arrive at a different conclusion, or, at least, to entertain some doubt upon it. For instance, Mr. William J. Hughes, an eminent authority on the subject, says in his work on Federal Practice, published in 1931, § 2524, headed "Petition —Prevalence over Pleadings:"

"As the statute requires the state court to accept the petition, it must receive the statements of facts made therein (even though the averments are against the facts stated in the pleadings) as true prima facie, and transfer the case to the federal court. There the petition for removal is also receivable as true prima facie and, therefore, as, upon the face of the record, paramount to the pleadings filed in the state court, but not conclusive of the facts upon which the jurisdiction depends; i. e., the cause is rightfully in the federal court unless the plaintiff shows that the real jurisdictional facts did not warrant the removal— which may be done by a plea in abatement to the jurisdiction. The federal court may also look at the whole record and determine the jurisdictional facts contrary to the averments in the petition for removal, as where it is evident from the pleadings that the facts alleged in the petition do not exist, but cases of this kind are the exception to the general rule that the statement of the petition for removal must be taken as prima facie true, as against the statements and averments of the pleadings filed in the state court. As examples of exceptions to the general rule just stated, the court might reject as unfounded a statement in a petition for removal showing the amount in controversy to be in excess of the jurisdictional amount, in a suit upon a note or bill or penal bond for less than that amount, without any other cause of action; and it is settled that a petition for removal on the ground of a federal question cannot prevail if the federal question does not appear in the plaintiff's pleading, for the want of it cannot be supplied by averments in the petition."

The concluding clause of the above quotation is at variance with what precedes it, and leaves the mind somewhat in doubt as to the control of the petition for removal over the plaintiff's pleading in the case.

Mr. James Hamilton Lewis, in his work on Removal of Causes, published in 1923, says, in § 276:

"If the cause is removable, it is the duty of the state court to accept the petition and bond and proceed no

further in the case. A trial and judgment thereafter would be *coram non judice,* unless its jurisdiction over the cause and the parties is in some way restored. Under the well-recognized rule in the Federal courts and in the courts of final resort in most of the states, when a petition for removal is filed in a state court, accompanied by the proper bond and notice, if the record, including the petition for removal, shows upon its face that a case is made which is removable, it is the state court's duty to order the removal, its jurisdiction being at an end. Although no order of the state court is necessary for removal, the usual practice is, if, on examination, that court finds the petition for removal sufficient, to enter an order of removal. When the right of removal depends upon the existence of certain facts, they must be determined by the Federal court, which alone can determine controverted issues of fact on which the right to removal depends; and it is the duty of the state court, in such cases, to defer all action until such issues have been passed upon by the Federal court. The state court must accept as true all allegations of fact in the petition for removal, where removal is sought for diversity of citizenship. Whether, however, the state court accepts the petition and bond, or whether it grants or denies an order for removal, does not affect the fact of removal. The cause is removed, if it be a removable cause, although the state court may refuse to grant an order of removal.''

And, in § 277:

''Unless the cause is removable, the state court is not required to yield jurisdiction upon the filing of the petition for removal. The record as made by the filing of the petition cannot be questioned in the state court, but if, as thus made, it appears upon its face that the cause is not removable, it is not only the privilege, but the duty, of the state court to retain jurisdiction and to adjudicate the issues raised by the pleadings. The state court is entitled to proceed with the case until it shall have been 'judicially informed,' by the tender of a proper petition in a removable cause, that its power over the case is suspended. . . .

"In determining the question of law presented to the state court, consideration may be given, not only to the petition for removal, but the petition of the plaintiff and the pleadings and proceedings down to that time.

"Where the case is not removable on the face of the plaintiff's petition and the petition for removal, the Federal court is without jurisdiction, and that jurisdiction cannot be conferred by consent."

In 3 Foster's Federal Practice (6th Ed.), § 554, it is said that, where the question is doubtful, it seems to be the better practice for the state court to take no action until the Federal court has passed upon a motion to remand the cause; that, if the petition and bond are sufficient, the state court is divested of jurisdiction over the cause.

Appellant, however, cites as authority for its contention 54 C. J. § 75, pp. 244, 245, and numerous cases listed in the footnotes. The first case cited in the notes is that of *Great Northern Ry. Co. v. Alexander,* 246 U. S. 276, 38 S. Ct. 237, 62 L.Ed. 713. That case announces the rule in the following language, on pp. 281 and 282:

"It has been frequently decided by this court that whether a case arising, as this one does, under a law of the United States is removable or not, when it is commenced *(there being no claim of fraudulent attempt to evade removal),* is to be determined by the allegations of the complaint or petition and that if the case is not then removable it cannot be made removable by any statement in the petition for removal or in subsequent pleadings by the defendant. *Tennessee v. Union & Planters' Bank,* 152 U. S. 454; *Chappell v. Waterworth,* 155 U. S. 102; *Texas & Pacific Ry. Co. v. Cody,* 166 U. S. 606; *Taylor v. Anderson,* 234 U. S. 74. . . .

"The obvious principle of these decisions is that, in the absence of a fraudulent purpose to defeat removal, the plaintiff may by the allegations of his complaint

determine the status with respect to removability of a case, arising under a law of the United States, when it is commenced, and that this power to determine the removability of his case continues with the plaintiff throughout the litigation, so that whether such a case non-removable when commenced shall afterwards become removable depends not upon what the defendant may allege or prove or what the court may, after hearing upon the merits, *in invitum,* order, but solely upon the form which the plaintiff by his voluntary action shall give to the pleadings in the case as it progresses towards a conclusion.'' (Italics in parenthesis ours.)

Many other cases cited by the text support the rule above announced, to which may be added the following: *Illinois Central R. R. Co. v. Sheegog,* 215 U. S. 308; *Boyle v. C. R. I. & P. Ry. Co.,* 42 Fed. (2d) 633 (C. C. A.); *Blease v. Safety Transit Co.,* 50 Fed. (2d) 852 (C. C. A.); *Newbury v. Meadows Fertilizer Co.,* 1 Fed. Supp. (Nov. 5, 1932) 665.

Respondents in their brief appear to concede the rule to be as appears in the above quotation from *Great Northern Ry. Co. v. Alexander, supra.* We therefore accept the rule as thus announced. At this point, however, we will observe that it is equally well settled by late and controlling authority that the allegations of fact in a petition for removal, if the same be properly verified, must be accepted by the state court as true; that, if no issue be taken as to the statement of a duly verified petition for removal, plaintiff is presumed to assent to the truth thereof; that issues of fact upon a petition for removal are to be determined by the Federal court. *Farmers Bank & Trust Co. v. A. T. & S. F. Ry. Co.* (C. C. A. 1928) 25 Fed. (2d) 23; *Wilson v. Republic Iron & Steel Co.,* 257 U. S. 92, and cases hereinabove already cited.

The portion of the quotation in the *Great Northern*

*Ry. Co. v. Alexander* case, *supra,* contained in parenthesis which we have italicized, creates an exception to the general rule, and indicates that the allegations of the complaint do not control where there is a fraudulent purpose to defeat removal. The cases are unanimous upon that point.

Now, the petition for removal not only delineates a state of facts which, of themselves, clearly present a case of removability, but fortifies those facts with a sworn statement that the full history of the case had been wrongfully concealed by appellant for the purpose of preventing removal. In passing, we may say that appellant in its reply brief requested leave of the court to amend its complaint by striking therefrom the following:

"That in its order granting such rehearing the Interstate Commerce Commission authorized but did not require the carriers interested to re-establish the rates existing before the fixing of the new and lower rates."

We do not say, nor do we believe, that there was any deliberate attempt on the part of the state to defraud the court by drawing the complaint in such a way as that, upon its face, aside from the findings incorporated by reference, it would present a non-removable case; nor do we stamp as actually fraudulent the state's attempt, by motion, in its reply brief, to withdraw certain allegations from its complaint. But we do think that a failure to present the actual situation, as made by the findings, if done knowingly, would, in its effect, amount to fraud, that is, it would be constructively fraudulent. The state court is entitled to be "judicially informed" that its power over a case has been suspended, and that it is about to proceed in a matter in which its action will eventually

prove to be a nullity, because, when so "judicially informed," its power is at an end.

But, aside from any question of fraud, we think that our conclusion may be safely rested upon an even stronger foundation. In our opinion, the state's reference to the findings of the department was not merely anticipatory of respondents' defense, as it is now claimed by the appellant, but rather affirmatory of the right now asserted by the department, and, consequently, they were an essential feature and necessary part of the complaint. It is suggested by the complaint that a rehearing was had by the commission in its investigation held jointly with the department, yet the action taken by the commission as the result of such investigation is not disclosed on the face of the pleading. It is also stated in the complaint that the rates charged in excess of those prescribed in the findings made a part of the complaint, were and would be unjust, unreasonable and unduly prejudicial. We thus have the suggestion that the commission took some action not revealed, and also that the findings prescribed the rates beyond which the carriers would not be permitted to go.

In other words, appellant makes an affirmative claim of right by reason of an order based on certain findings made by the department. Those findings disclose the history and the basis of the department's final act. There is, therefore, every reason, we think, in favor of, and none against, the conclusion that the findings must be considered as a part of the complaint. When so considered, the removability of the cause becomes, by the complaint, not only apparent but mandatory.

■ Appellant next contends that mandamus proceedings are not removable from the state to the Federal court. As a general, but somewhat limited,

proposition, this is true. When the proceeding is purely and strictly one of mandamus, calling for the exercise of a highly prerogative writ, and there is no other issue involved, or where the writ is not merely ancillary to the jurisdiction with which the court is already vested, the Federal court does not acquire jurisdiction by the commencement of such action. *Rosenbaum v. Bauer,* 120 U. S. 450; *State ex rel. Seattle v. Puget Sound Traction, L. & P. Co.,* 243 Fed. 748. Hence, if the writ served no other purpose than to compel obedience to a state order, lawfully and properly made, regulating matters of purely state concern, the writ could not be used to confer jurisdiction where none existed without it.

But in this case, as we have already seen, the purpose and object of the proceeding is something more. Its substantial purpose and object is either to set aside and nullify an order of the commission made in the premises, or else to make effective in the interim an order at variance therewith. The prayer of the complaint asked that an inquiry be made into the facts and circumstances, and that, upon a hearing, the respondents be required to file and promulgate certain tariffs establishing rates for transportation of grain between certain points. Whatever may be the form of a proceeding, the court will always look beyond its formalities and determine its real object and substance, particularly where the proceeding affects the interests of the general public. *State ex rel. Tacoma v. Tacoma Ry. & P. Co.,* 244 Fed. 989; *State ex rel. Seattle v. Pacific T. & T. Co.,* 1 Fed. (2d) 327. Here the interests concerned were not merely those of a shipper or of a carrier, or even of a particular community, but of a whole area and of the public generally.

Appellant next urges, consecutively, that the case was not removable because (1) the Federal court did not have jurisdiction, and (2) the state court did have jurisdiction. We have already said enough to indicate our view that the subject matter of this cause is within the exclusive jurisdiction of the Federal court, and hence it is unnecessary to discuss these two contentions.

Respondents, in their brief, question appellant's right to appeal from the removal order. An interesting question is thus raised, which has been variously passed upon by different courts. Since we have disposed of the case on its merits, however, it is unnecessary to decide this question, and we therefore express no opinion upon it.

We conclude that the trial court was right in its conclusion and disposition of the case, and its judgment is therefore affirmed.

BEALS, C. J., MAIN, TOLMAN, and BLAKE, JJ., concur.