[No. 26756.   Department One.   August 16, 1937.]

THE STATE OF WASHINGTON, *on the Relation of Frederick H. Furey et al., Plaintiff*, v. THE SUPERIOR COURT FOR DOUGLAS COUNTY, C. G. *Jeffers, Judge, Respondent.*[1]

[1]Reported in 70 P. (2d) 1043.

*Sam R. Sumner, John C. Hurspool*, and *Ernest M. Russell*, for relators.

*The Attorney General* and *E. P. Donnelly, Assistant*, for respondent.

GERAGHTY, J.—This cause is here for review on certiorari of an order entered in an action brought by the state of Washington to condemn what is known as the Brewster bridge across the Columbia river, between Douglas and Okanogan counties. The order adjudged the acquisition of the bridge to be for a public use, necessary to the state, as an integral part of its primary highway system.

After the institution of condemnation actions in the superior courts of Okanogan and Douglas counties, the Okanogan county case was transferred to Douglas county. Subsequently, the two actions thus pending in the superior court of Douglas county were consolidated for trial, and, after hearing, the order adjudicating a public use now on review was entered.

The relators urge two principal contentions in this court: First, the want of legislative authority for the condemnation, and secondly, the lack of jurisdiction in the superior court to make the order.

██ In the main, the relators predicate their contention that there is a lack of legislative authority for the proceeding upon the language of chapter 54 of the 1937 Session Laws, p. 194, § 1 of which follows:

"There is hereby appropriated out of the motor vehicle fund of the State of Washington for the purchase of the toll bridge across the Columbia River, or the construction of a new bridge at a feasible place near said toll bridge, at Brewster, Washington, on state road No. 10 extension from the vicinity of Brewster to the vicinity of Coulee City in the State of Washington, with the *necessary* right of way and approaches, not now a part of the primary highway system, by the director of highways under the authority contained in chapter

149, Laws of 1935, the sum of three hundred ten thousand dollars ($310,000.00), or so much thereof as may be necessary."

Stress is laid on the absence of an express reference to condemnation in the act and the employment of the word "purchase"; and it is strongly urged that the word implies that the bridge is to be acquired by a process of bargaining and negotiation. But the right of the state to acquire the bridge by condemnation does not rest alone on the language of this statute. It will be observed that the act refers to the authority contained in chapter 149 of the Laws of 1935, p. 474. The material sections of that act follow:

"Section 1. That the department of highways is hereby directed forthwith to make a detailed survey and appraisal of the toll bridge across the Columbia river at Brewster, Washington, on state road No. 10 extension from the vicinity of Brewster to the vicinity of Coulee City in the State of Washington, and the necessary right-of-way and approaches not now a part of the primary highway system, for the purpose of ascertaining and determining the present fair value thereof.

"Sec. 2. The director of highways is hereby empowered and directed to acquire by purchase, gift or condemnation the said toll bridge and necessary right-of-way for approaches thereto at a price not to exceed the present fair value thereof. If the said bridge and the necessary right-of-way for approaches thereto cannot be so acquired for a present value considered to be fair therefor, the director of highways may in his discretion proceed to acquire the necessary right-of-way for the erection and construction of a new bridge at a feasible place near said toll bridge so that the same will be connected with and become an integral part of said state road No. 10 extension."

Read together, it will be seen that the 1937 act is supplementary to the act of 1935. The latter was a broad authorization to the highway department to ac-

quire the bridge by purchase, gift or condemnation, with authority to the director, in certain contingencies, to construct a new bridge near the existing one.

In so far as the authorization for condemnation was concerned, this act was not limited as to time for its exercise. In so far as it authorized the construction of a new bridge, in case the existing one could not be acquired, the act might be ineffective, since it made no appropriation; and, even if an appropriation had been made for acquisition without condemnation, the appropriation would lapse with the expiration of the biennium. It is evident that this circumstance largely determined the necessity for the 1937 act, which is essentially an appropriation to enable the highway department to carry out the direction contained in the 1935 act.

Apart from the particular authority contained in the 1935 act, the highway department, on authorization by the legislature, in any appropriate language, to acquire property necessary to the completion of any unit of the state's highway system, could, under the broad language of Rem. Rev. Stat., § 891 [P. C. § 7661], maintain condemnation. The section provides:

"Whenever any officer, board, commission, or other body representing the state is authorized by the legislature to *acquire* any . . . property, deemed necessary for the public uses of the state, or any department or institution thereof, and the officer, board, commission or other body whose duty it is to *acquire* such . . . property is unable to agree with the owner or owners thereof for its purchase, it shall be the duty of the attorney general to present to the superior court of the county in which said . . . property so sought to be acquired or appropriated shall be situated, a petition in which the . . . property sought to be appropriated shall be described with reasonable certainty, and . . . the object for which the land is sought to be appropriated, and praying that a jury be

impaneled to ascertain and determine the compensation to be made in money to such ,owner . . ." (Italics ours.)

The procedure outlined in this section was followed in the present instance. There can be no question of the authority granted by the law of 1935 to the highway department to "acquire" the Brewster bridge. To attribute to the use of the word "purchase" in the 1937 act a legislative purpose to limit the authority granted by the 1935 act would be to impute to the legislature a refinement in the use of words not warranted by legislative experience. While "acquire" in some relations has a broader significance than "purchase," both words are often employed to convey the same idea. If the legislature intended by the 1937 act to exclude authority to condemn, it would not have let the matter rest on so tenuous a foundation as the fine distinction in meaning between the two words.

■ The relators' second contention is that the legislature has failed to provide venue for the condemnation of an inter-county bridge. The basis of this contention is that, since under Rem. Rev. Stat., § 891, condemnation proceedings are to be brought in the county in which the property sought to be taken is situated, and, as part of the Brewster bridge is in Douglas county and part in Okanogan county, and condemnation could not be had of half of the bridge, there is, therefore, no venue for an action condemning the whole bridge.

Whatever merit there might otherwise be in this view, it is not applicable under the record here, since, as we have seen, the action was brought in both counties and thereafter the Okanogan case was transferred for trial to Douglas county and the two cases consolidated, so that the value of the bridge can be determined by the superior court of Douglas county as a

whole. The transfer of the Okanogan case to Douglas county was authorized by the third subdivision of Rem. Rev. Stat., § 209 [P. C. § 8545], providing "that the convenience of witnesses or the ends of justice would be forwarded by the change." But there is respectable authority supporting the view that, in a situation like this, where a property lying partly in one county and partly in another is so integrated that it must be valued as a whole, the proceedings may be in the appropriate court of either county, even under statutory authority similar in language to § 891.

The Massachusetts case of *Aetna Mills v. Inhabitants of Brookline,* 178 Mass. 482, 59 N. E. 1018, was one with features very much like the present case. The defendant city determined to take a certain quantity of water for municipal use from the Charles river, thereby becoming liable to pay all damages sustained by any persons in their property by this taking of the water. The Massachusetts statute gives to persons sustaining such damages, and not agreeing upon them with the town, the right to apply for an assessment of the same by petition to the superior court in the county in which the dams or other works occasioning the damages are situated. In that case, the works by which the defendant took water, and which the several petitioners contended damaged their property, was situated on the division line between the counties of Norfolk and Suffolk, and so were partly in each of those counties.

Each petitioner for damages filed simultaneously in each of the counties a petition to the superior court for the assessment of his damages. The defendant city, while admitting the right of the petitioners to proceed in either county, denied their right to proceed in both at the same time, and asked that proceedings be had only in Norfolk county, and offered to file a stipulation

that, if it was liable at all, it was liable in the county of Norfolk. The stipulation was filed and the Suffolk cases were ordered dismissed.

On appeal, the supreme judicial court of Massachusetts held that the lower court, in effect, by its order deprived the petitioners of their right to elect in which county they chose to have their causes tried, and reversed the order dismissing the actions in Suffolk county. However, in relation to the question of venue, the court said:

"But we are of opinion that the respondent is right in its contention that the reasonable construction of the statute is that the damages occasioned by the respondent's taking under St. 1888, c. 131, cannot be divided into damages occasioned by the part of its works situated in Norfolk and damages occasioned by the other part of the same works situated in Suffolk, but that the whole damages are to be assessed in one petition, in one county or the other at the election of the petitioner. See *Bates v. Ray*, 102 Mass. 458; *Miller v. County Commissioners*, 119 Mass. 485; *Brockton v. Cross*, 138 Mass. 297."

In a Montana case, *Helena v. Rogan*, 26 Mont. 452, 68 Pac. 798, the city of Helena, in a proceeding in Lewis and Clarke county, sought to condemn water rights appurtenant to lands in that county but taken in another county. The court sustained the right to maintain the action in Lewis and Clarke county under a statute which, like our own, provided that all proceedings in condemnation must be brought in the district court of the county in which the property is situated.

Furthermore, as chapter 149 of the 1935 Laws authorized the condemnation of the bridge as a whole, there was implied of necessity the right to maintain the action in some court, and, if the venue described in § 891 [P. C. § 7661] is inapplicable, then the venue

would be controlled by Rem. Rev. Stat., § 204 [P. C. § 8541]:

"Actions for the following causes shall be commenced in the county in which the subject of the action, or some part thereof, is situated:—
"1. For the recovery of, for the possession of, for the partition of, for the foreclosure of a mortgage on, or for the determination of all questions affecting the title or for any injuries to real property;"

Finding no error in the proceedings of the court below, the order is affirmed.

STEINERT, C. J., MAIN, MILLARD, and BLAKE, JJ., concur.

[1]Reported in 70 P. (2d) 1062.