[No. 27010. Department One. March 1, 1938.]

THE STATE OF WASHINGTON, on the Relation of Bremerton Bridge Company et al., Plaintiff, v. THE SUPERIOR COURT FOR KITSAP COUNTY, E. D. Hodge, Judge, Respondent.[1]

[1] Reported in 76 P. (2d) 990.

8

*Hartman, Hartman, Simon & Coles, Todd, Holman & Sprague,* and *Lowell P. Mickelwait,* for relators.

*The Attorney General, L. C. Brodbeck* and *John E. Belcher, Assistants,* for respondent.

SIMPSON, J.—This proceeding is by way of a peremptory writ of certiorari to review the actions of the superior court of Kitsap county in eminent domain proceedings.

January 12, 1938, the attorney general of the state of Washington, acting pursuant to chapter 148, Laws of 1935, p. 473, chapter 135, Laws of 1937, p. 502, and under the provisions of Rem. Rev. Stat., § 891 [P. C. § 7661], filed a petition on behalf of the state of Washington to appropriate for public use the Bremerton toll bridge across Sinclair's inlet between Bremerton and East Bremerton in Kitsap county, alleging that the director of highways of the state of Washington, in the exercise of the sovereign right of eminent domain and pursuant to the chapters first mentioned, was authorized and empowered to acquire for the state the Bremerton toll bridge, and that he had attempted to purchase the bridge and its approaches, but had been unable to agree with the owners thereof, relators here, for its acquisition. Notice of condemnation, as required by Rem. Rev. Stat., § 892 [P. C. § 7662], was filed containing the information that the petition would be presented to the court for hearing on January 28, 1938.

The Bremerton Bridge Company and the Pacific National Bank of Seattle appeared in the action and filed a petition with the court asking that the cause be removed to the United States district court for the western district of Washington, on the ground that the

action arose under the laws of the United States and was one of a civil nature of which the district courts of the United States have original jurisdiction. This petition for removal was denied by the court January 28, 1938.

On the same day, the court proceeded to hear the petition of the state to condemn the bridge. At this hearing, an oral demurrer was presented by the bank and the bridge company upon the ground that the petition did not state facts sufficient to constitute a cause of action. This was overruled. Testimony was then taken, after which the court signed an order to the effect that the contemplated use for which the bridge was sought to be appropriated was really a necessary public use of the state of Washington. Thereafter, the bridge company and the bank applied to this court for a writ of review, which was issued January 31, 1938.

This writ, besides directing the superior court to return a full and complete transcript of the records and proceedings in the cause, required the court in the meantime to desist from further proceedings in the matter to be reviewed.

The facts necessary to a determination of this case are summarized as follows: Some time in July, 1937, a petition was filed in the superior court of Kitsap county for the condemnation of the Bremerton bridge. Respondents in that case, being the same as relators in this, filed a petition for the removal of the cause to the district court of the United States. That motion was granted and the case removed to the district court. A petition was made in that court to remand the case to the state court. This last petition was granted, after which proceedings were had in the state court resulting in a petition for a writ of certiorari being presented in this court, which was denied. Thereafter,

the case was, upon the motion of the state, dismissed without prejudice.

The only difference in the petition presented in the case filed in July and the one at bar is that the additional allegation is made in this petition to the effect that the director of highways had attempted to purchase the property of the owners before starting proceedings to condemn.

The only other evidence introduced at the trial bearing upon the question before us was the certificate of the director of highways to the effect that he had authorized and directed condemnation proceedings to secure the bridge and its necessary rights of way, to which certificate was attached a map showing the location of the bridge and its approaches.

The attorney general has presented a motion to quash the writ of certiorari, or in the alternative to strike the stay order contained therein, upon the ground that the order for a writ of review was improvidently issued.

It is the settled law of this state that adjudication of public use in condemnation proceedings may not be reviewed by appeal, but only by certiorari.

The statute, Rem. Rev. Stat., § 894 [P. C. § 7664], provides that an order declaring a public use becomes final unless review thereof be taken to this court within five days after the entry of such order.

*State ex rel. Pagett v. Superior Court,* 46 Wash. 35, 89 Pac. 178; *Chicago, M. & P. S. R. Co. v. Slosser,* 82 Wash. 467, 144 Pac. 706; *Spokane Valley Power Co. v. Northern Pac. R. Co.,* 99 Wash. 557, 169 Pac. 991; *State ex rel. Abbott v. Superior Court,* 119 Wash. 26, 204 Pac. 815; *State ex rel. Whitman County v. Superior Court,* 123 Wash. 182, 212 Pac. 268.

Actions of this nature require much effort and expense to both relators and respondent. A continuation

of the trial pending the decision of this case would result in useless expense without profit to either relators or respondent.

For the reasons just given, the motions to quash and to strike will be denied.

The first contention urged by relators is that the court erred in refusing to grant the petition of removal to the Federal court.

In their petition for removal, they asserted that the bridge in question was constructed and is maintained, owned, and operated pursuant to certain acts of Congress, namely, 34 Stat. 84 (33 U. S. C. A., § 491), and 44 Stat. 744.

The state has contended that it is the duty of courts to determine from the face of the petition for condemnation alone whether the case is removable. In determining that question, however, we deem it proper to consider not only the original condemnation petition, but also the petition for removal and the entire record before this court, and to accept the facts appearing therein as true. We have not adopted this course because of any belief that the state was attempting to conceal the true issues, but simply because we feel that the whole record should be considered. *State ex rel. Department of Public Works v. Northern Pac. R. Co.*, 172 Wash. 37, 19 P. (2d) 128.

If from this entire record, including the original condemnation petition and that for removal, this cause does not seem to be a removable one, then the state court is not bound to surrender its jurisdiction and may proceed as if no application for removal had been made. The burden is upon the relators to show affirmatively by the record that they are entitled to the requested transfer.

"It being only upon the filing, in a state court in which is pending a suit of one of the classes removable

upon application to such state court, of a petition for removal which properly shows that the cause is removable, accompanied, where required, by a sufficient bond, that the removal of such cause to a federal court is effectuated, the state court has the right and is under a duty to decide for itself, purely as a question of law, whether or not upon its face the petition, considered in connection with the rest of the record, presents a removable case and thereby has terminated the jurisdiction of such court." 54 C. J. 331, § 253.

"A pure question of law presented by a petition for removal as to whether, admitting the facts stated to be true, it appears on the face of the record that the petitioner is entitled to removal, is one which both the state court and the federal court have the right to decide. The theory on which this rule rests is that the record closes, so far as the question of removal is concerned, when the petition for removal is filed, and the necessary security furnished. It presents then to the state court a pure question of law, and that is, whether admitting the facts stated in the petition for removal to be true, it appears on the face of the record, which includes the petition and the pleadings and proceedings down to that time, that the petitioner is entitled to a removal of the suit. That question the state court is at liberty to determine for itself, and to refuse to surrender jurisdiction where the case as thus disclosed on the record is not a removable one." 2 Longsdorf's Cyclopedia of Federal Procedure (1928), 176-7, § 315.

See, also, *Stone v. South Carolina,* 117 U. S. 430, 29 L. Ed. 962, 6 S. Ct. 799; *Powers v. Chesapeake & Ohio R. Co.,* 169 U. S. 92, 42 L. Ed. 673, 18 S. Ct. 264; *Madisonville Traction Co. v. Saint Bernard Mining Co.,* 196 U. S. 239, 49 L. Ed. 462, 25 S. Ct. 251; *Gulf Refining Co. v. Morgan,* 61 F. (2d) 80.

██ It is conceded that a toll bridge may be changed to a free one upon the payment of due compensation by the public to its owners. 9 C. J. 451, § 41.

This assignment of error does not present any question relating to the construction or operation of the

bridge, but the sole question presented is whether the state court or the Federal district court is the appropriate forum for the exercise of the power of eminent domain where the state seeks to condemn a bridge that is built over navigable waters.

No case has been cited in which a petition for removal has been recognized by a Federal court on the ground that the condemnation proceedings relating to the condemnation of a bridge over a navigable stream should be tried in Federal court and not in the state court.

With these facts in mind, we examine the Federal statutes which the relators urge afford them a ground for granting their petition for removal.

The act of 1906, 34 Stat. 84 (33 U. S. C. A., § 491), is a general act the function of which is to regulate construction of bridges over navigable waters, and is supervisory and permissive with respect to such structures maintained across or over navigable waters of the United States.

That act merely safeguards against an undue interference with navigation by wholly unauthorized structures. Such a bridge or structure is to be recognized as a post route, limitations on the toll rate for transmission thereover of mails, troops and munitions are provided for, and provision is made for constructing, maintaining and repairing telegraph and telephone wires across such a bridge and its approaches. These are conditions which the Federal government may impose under the commerce clause of the Federal constitution. *United States v. Arizona,* 295 U. S. 174, 79 L. Ed. 1371, 55 S. Ct. 666.

By a special act of 1926, 44 Stat. 744, Congress permitted the erection of the bridge in question within the state of Washington. The act further provided that, after the completion of the bridge, the state of

Washington could acquire all right, title and interest in the bridge

" . . . by purchase or condemnation in accordance with the laws of such State governing the acquisition of private property for public purposes by condemnation."

We are of the opinion that this cause does not fall within the purview of the provisions of Title 28 U. S. C. A., § 71, relating to the removal of suits or actions from state courts. This conclusion is fortified by the express provisions of the act of Congress (44 Stat. 744), which provides, as we have just indicated, that the condemnation proceedings shall be in accordance with the laws of the state of Washington.

This conclusion was well stated by the trial court when he said:

"The act itself definitely permits the state—says to the state, 'you can go ahead and condemn this bridge, if you want to take it over, the same way, in the same manner as is given by the laws of the state of Washington for the acquisition of private property for public purposes by condemnation.' This is a proceeding for that purpose."

By this act, Congress surrendered completely whatever jurisdiction it might otherwise have had to the state court in so far as the acquisition of the bridge is concerned.

"The courts uniformly assert that the right to remove a suit from a state court to a United States court is wholly statutory, and can be exercised only in the cases and in the mode designated by Congress. The source of the right and the authority to remove is that part of the federal judiciary laws found in the Judicial Code, § 28 *et seq.* A case brought or pending in a state court must remain there unless the party seeking to have it transferred to a federal court can show cause for so doing under some act of Congress. Not only is there no right of removal to a federal court except as conferred by some act of Congress, but before a party

can avail himself of the right he must show on the record that his is a case which comes clearly within the provisions of the statute, and assert and exercise the right in the mode and manner indicated by the removal laws. The right of removal cannot rest on mere convenience of parties and avoidance of expense or litigation, and it is often stated in the cases that where the right is doubtful the case should not be removed, or, if removed, it should be remanded; that while a case should always be removed when authorized by law, a removal not so authorized should always be refused and the previously acquired jurisdiction of the state court respected. Removal is not a vested right of property but rather a matter of grace, entirely within the power of Congress to take away or impair." 1 Longsdorf's Cyclopedia of Federal Procedure 794-5, § 160.

The state was always the source of the power to construct the bridge. The Federal government was interested in it only because of its constitutional authority over navigation, interstate commerce and post roads. The 1926 act does not make Congress the source of the right to build, but assumes the right comes from another source, namely, the state of Washington.

The power of eminent domain reposing in the state could have been used for the construction of the bridge and thereafter the right of the state to appropriate the property to a public use remained dormant in the state, subject to be exercised at the election of the state. Such power may be exercised to condemn the bridge after it is a completed structure. *Detroit International Bridge Co. v. American Seed Co.*, 249 Mich. 289, 228 N. W. 791.

The title of the state of Washington to the bridge, if acquired after the completion of the condemnation proceedings, will be subject to the same conditions as set forth in the acts of Congress of 1906 and 1926, respectively, and to the powers granted to Congress by

the Federal constitution. The acquisition of the bridge by the state will not change in any way the manner in which the bridge may be operated in so far as the Federal government is concerned.

Furthermore, this question has already been decided by the Federal court when it was presented to that court in the condemnation case filed during July, 1937. That case involved the same parties and essentially the same pleadings as the petition for removal in the instant case. That case was remanded to the state by the Federal court, and from its decision no appeal was taken.

We find no error in refusing the application for removal.

There is no merit in the demurrers interposed by relators. The complaint properly stated all of the requirements of the statutes relating to the taking of property by eminent domain proceedings.

It is next maintained by relators that the court erred in denying their motion to dismiss the proceedings at the close of the state's case and in entering an order adjudicating public use. These two assignments, of course, raise the same questions, since relators did not introduce testimony.

Under these assignments, it is urged that the evidence introduced by the state was insufficient upon which to base the order of public convenience and necessity.

The authority to acquire the bridge by condemnation proceedings is contained in our general statutes relative to acquiring property by eminent domain proceedings and chapter 148, Laws of 1935, p. 473, and chapter 135, Laws of 1937, p. 502. These statutes, taken together, indicate the state's desire to obtain the bridge and authorize the director of highways to institute the proceedings necessary to its acquisition.

The power of eminent domain is inherent in the state, and the only limitations upon the exercise of this power imposed by our state constitution are that just compensation be made or paid into the court for the benefit of the owner for the property so taken, to be ascertained by a jury unless waived, and that the contemplated use be a public one. Art. I, § 16, Art. XII, § 10. *McPherson Brothers Co. v. Douglas County,* 150 Wash. 221, 272 Pac. 983; *Decker v. State,* 188 Wash. 222, 62 P. (2d) 35; I Lewis, Eminent Domain (3d ed.), 1, § 1; 20 C. J. 513, § 1.

Under Rem. Rev. Stat., § 925 [P. C. § 7650], three prerequisites to an adjudication of public use are recognized: (1) That the use is really a public use; (2) that the public interests require it; and (3) that the property appropriated is necessary for the purpose. *State ex rel. Puget Sound Power & Light Co. v. Superior Court,* 133 Wash. 308, 233 Pac. 651; *State ex rel. Oregon-Washington R. & Nav. Co. v. Superior Court,* 155 Wash. 651, 286 Pac. 33.

 It is settled that the operation of a bridge to be used as a part of a public highway constitutes a public use. *In re Yesler Way,* 94 Wash. 427, 162 Pac. 536; *State ex rel. Furey v. Superior Court,* 191 Wash. 235, 70 P. (2d) 1043; *Rumford & Mexico Bridge Dist. v. Mexico Bridge Co.,* 115 Me. 154, 98 Atl. 625; *State ex rel. Owen v. Stevenson,* 164 Wis. 569, 161 N. W. 1; *Fulton Ferry & Bridge Co. v. Blackwood,* 173 Ark. 645, 293 S. W. 2; *Crosby v. Hanover,* 36 N. H. 404; *In re Towanda Bridge Co.,* 91 Pa. St. 216; *Detroit International Bridge Co. v. American Seed Co., supra;* 20 C. J. 559-561, § 43; 10 R. C. L. 39, § 35; I Lewis, Eminent Domain (3d ed.), 522, § 261; Annotation 22 L. R. A. (N. S.) 135.

The bringing of the action by the state and the certificate of the director of highways directing the institu-

tion of condemnation proceedings to secure the bridge were sufficient to justify the court in finding that the contemplated use of the bridge was really a public one.

The necessity of taking land and public use decided by public administrative authorities empowered so to act, is binding on the courts in the absence of some showing of actual fraud on the part of such authorities or such arbitrary and capricious conduct as would amount to constructive fraud. *Tacoma v. Titlow,* 53 Wash. 217, 101 Pac. 827; *Spokane v. Merriam,* 80 Wash. 222, 141 Pac. 358; *State ex rel. Puget Sound etc. R. Co. v. Joiner,* 182 Wash. 301, 47 P. (2d) 14; *State ex rel. Flick v. Superior Court,* 144 Wash. 124, 257 Pac. 231; *State ex rel. McPherson Brothers Co. v. Superior Court,* 148 Wash. 203, 268 Pac. 603. Relators do not contend that the action of the state in this case constituted fraud in any manner.

The other error urged under this head is that there was no proof to the effect that the director of highways tried but was unable to agree with the owners for the purchase of the bridge, and that such neglect on the part of the state resulted in the courts having no authority to make the order of necessity.

It is contended that pleading and proof of the offer to settle with the owners was a condition precedent to the beginning and maintaining of the action to condemn relators' property.

Since Rem. Rev. Stat., § 891 [P. C. § 7661], requires that the state make an attempt to agree with the owner to acquire by purchase before action is instituted to condemn the property, a *bona fide* attempt to do so is a necessary condition precedent to the institution of such condemnation proceedings.

Eminent domain statutes, being in derogation of the common right, must be strictly construed, both as to the extent of the power and as to the manner of its

exercise. *State ex rel. Postal Telegraph-Cable Co. v. Superior Court,* 64 Wash. 189, 116 Pac. 855.

There is no evidence in the record in the case at bar indicating that this condition precedent was complied with. The statute is mandatory and not directory.

In *Spokane v. Merriam,* 80 Wash. 222, 141 Pac. 358, we said:

"It may be conceded that, where the duty to attempt to agree with the owner is imposed by the statute conferring the right to condemn, and prescribing the mode of its exercise, the failure to make the attempt will be fatal to the proceeding."

We have held that negotiation with the owner prior to institution of condemnation proceedings is not a condition precedent unless the statute under which condemnation proceedings is instituted requires it. *Puyallup v. Lacey,* 43 Wash. 110, 86 Pac. 215; *State ex rel. Jones v. Superior Court,* 44 Wash. 476, 87 Pac. 521; *Spokane v. Merriam, supra.*

We have also held that negotiation with the owner prior to the institution of condemnation proceedings is not a condition precedent when the owner of the property denies the right of the petitioner to take it. *State ex rel. Skamania Boom Co. v. Superior Court,* 47 Wash. 166, 91 Pac. 637; *State ex rel. Wilson v. Superior Court,* 47 Wash. 397, 92 Pac. 269.

*Seattle & Montana R. Co. v. State,* 7 Wash. 150, 34 Pac. 551, 38 Am. St. 866, 22 L. R. A. 217, was a case where one railway company sought to extend its tracks across the roadbed of another railway and brought an action to condemn in order to so cross. A statute provided:

". . . if the two corporations cannot agree upon . . . the points and manner of such crossings . . . the same shall be ascertained and determined in the manner provided by law for the taking of lands. . . ."

Interpreting that provision of the statute, this court held that an attempt to come to an agreement was a condition precedent to the bringing and maintaining of the action; and because the plaintiff railway company had not complied with such statute, the case failed.

Another case bearing upon the prerequisites to condemnation is *State ex rel. Hulme v. Grays Harbor & P. S. R. Co.*, 54 Wash. 530, 103 Pac. 809, in which it was held necessary as a condition precedent for the plaintiff railway company, which sought to condemn lands, to allege and prove that the whole amount of their capital stock had been subscribed, in view of the fact that the statute under which they were proceeding at that time provided

". . . that no railroad corporation 'shall . . . institute proceedings to condemn land for corporate purposes until the whole amount of its capital stock has been subscribed.' "

"In order to satisfy the statutory requirement, there must be a bona fide attempt to agree. There must be an offer made honestly and in good faith, and a reasonable effort to induce the owner to accept it. An attempt which is merely formal or colorable is insufficient." 20 C. J. 895, § 318.

"Where, as in most of the states, the statutes withhold compulsory condemnation until after an ineffectual attempt to agree with the owner as to the price of the land, the petition must allege the inability of the parties to agree, or a reason must be given for not making the attempt, as that the owner is legally incapable of contracting, or is absent, or unknown." 20 C. J. 951, § 363.

"Statutes conferring the power of eminent domain usually require that an attempt shall be made to agree with the owner of property desired, before instituting proceedings to condemn it. In whatever form of words this direction is couched, it is generally held to be imperative, and a condition precedent to the exercise

of compulsory powers. It is generally held that the inability to agree should be alleged and proven. . . . It·has been held that the objection may be taken at any stage of the proceedings and will be good ground for setting aside an award or quashing the proceedings on *certiorari*." 2 Lewis, Eminent Domain (3d ed.), 893, § 497.

In the Texas case of *Watt v. Studer*, 22 S. W. (2d) (Tex. Civ. App.) 709, there was involved a statute which gave the state highway commission authority to purchase lands in the construction of roads and contained the following language:

" 'Provided, that should the owner of such land or materials and the State Highway Commission fail to agree upon the amount to be paid therefor, then the Attorney General at the request of the State Highway Commission shall proceed to condemn the same. . . .' ".

Under this statute, it was held that to give the court jurisdiction in proceedings to condemn land, it must be pleaded and proved that a *bona fide* effort was made to agree with the owner regarding compensation.

In *In re Rogers*, 243 Mich. 517, 220 N. W. 808, the supreme court of the state of Michigan considered the construction of a statute which provided, "Whenever said board shall be unable to agree with any person interested in any parcel of such land," the board might proceed in eminent domain. The court said:

"This court has repeatedly held that a *bona fide* endeavor to acquire the land by purchase is made mandatory by statute, and, therefore, is jurisdictional, in the sense of a condition precedent, to [the] right to invoke the power of eminent domain. An effort to purchase must be made, the fact must be alleged in the petition invoking the power of eminent domain, and proved at some stage of the proceeding."

In *Portland v. Kamm*, 132 Ore. 317, 285 Pac. 236, the supreme court of the state of Oregon said:

"One of the provisions contained in the statute, compliance with which was made a condition precedent to the commencement of the condemnation proceedings, was: 'and the council cannot agree with the owner thereof as to the price to be paid, the council may direct proceedings to be taken under the general law of the state to procure the same.' This clearly implied that, before the condemnation proceedings could be instituted, there must have been an attempt made to reach an agreement with the owner."

The supreme court of Montana, interpreting a statute relative to condemnation for right of way which said,

" '. . . if such right of way shall not have been acquired by agreement between him or them, and the claimants or owners of the land . . .' "

held in the case of *Glass v. Basin Mining & Concentrating Co.,* 22 Mont. 151, 55 Pac. 1047:

"Legislation of this character also rests upon the doctrine of a reluctance on the part of courts to award a remedy by eminent domain, harsh in its nature, where the same end can be effected by contract between the parties. (Mills on Eminent Domain, Sec. 105.) Therefore it is that an effort to purchase the property required is made a condition precedent to condemnation. So, by the statute, these plaintiffs, claiming authority under the proceeding, must not only show affirmatively strict compliance with the law, but, inasmuch as no proceeding at all is authorized until after an effort to agree has been made, the petition must show the fact of such effort, and its failure."

Of like import are 2 Nichols on Eminent Domain (2d ed.), 1026; *St. Louis v. Glasgow,* 254 Mo. 262, 162 S. W. 596; *Winston-Salem v. Ashby,* 194 N. C. 388, 139 S. E. 764; *Milwaukee v. Diller,* 194 Wis. 376, 216 N. W. 837; and *Lake Shore & M. S. R. Co. v. Cincinnati, W. & M. R. Co.,* 116 Ind. 578, 19 N. E. 440.

Certainly, every owner whose property is to be taken for a public use is entitled to the protection of the

statute relative to settlement before a condemnation action is instituted and which gives him the right to meet with the state representatives and endeavor to agree as to the value of his property before engaging in litigation which may be extended and expensive. This opportunity can only be afforded to the property owner prior to the institution of the proceedings to condemn, and evidence concerning such settlement should be presented to the court at the hearing upon the question of necessity.

Rem. Rev. Stat., § 894 [P. C. § 7664], outlines the procedure the court must follow at an eminent domain hearing, including the ascertainment of damages. This statute allows the state to take the property after the order of necessity has been made and before the question of damages has been submitted to the jury.

The only question to be decided by the jury is that of damages occasioned by the taking of the property.

The statute relating to appeals in eminent domain proceedings, Rem. Rev. Stat., § 899 [P. C. § 7669], says:

". . . such appeal shall bring before the supreme court the propriety and justness of the amount of damage in respect to the parties to the appeal: . . ."

We conclude that the question of whether or not an attempt had been made to purchase the property should be presented to the court when the question of necessity and public use is litigated.

Having in mind the rule announced by other courts, which we have cited, our statutes, and our own decisions in which we recognize the general rule, we conclude that the proof of a *bona fide* attempt to settle with the owners of the property is a condition precedent to a finding of public necessity.

The judgment is reversed, without prejudice, how-

ever, to the bringing of another action to condemn the property described in the case.

The remittitur shall immediately be transmitted to the court below upon the filing of this opinion.

STEINERT, C. J., BLAKE, HOLCOMB, and GERAGHTY, JJ., concur.